Jean B. **THORNTON** and Charles M. Thornton

v.

**ESTATE of Gerald E. CRESSEY et al.**

Supreme Judicial Court of Maine.

April 22, 1980.

Argued Jan. 10, 1980.

Decided April 22, 1980.

---

Bernstein, Shur, Sawyer & Nelson by William W. Willard, orally, Portland, Titcomb, Fenderson & Knight by Jose W. Fenderson, Sanford, for plaintiffs.

Gaulin & Kimmel, by Kenneth E. Kimmel, orally, Biddeford, for Ida M. Cressey.

Smith, Elliott, Wood & Nelson by Roger S. Elliott, Saco, for Town of Waterboro.

Before WERNICK, and GODFREY, JJ., and DUFRESNE and DELAHANTY, A.R.JJ.

WERNICK, Justice.

Plaintiffs Jean B. and Charles Thornton, husband and wife, have appealed from a judgment entered in the Superior Court (York County) adjudicating against plaintiffs and in favor of defendants, Estate of Gerald E. Cressey and Ida M. Cressey, on the basis of the Court's acceptance of a referee's report which concluded that plaintiffs had failed to prove their claim of title to particular land.

Plaintiffs contend on appeal that the Superior Court Justice erred in accepting the referee's report and ordering entry of judgment for the defendants because: (1) the referee had no right to address and decide plaintiffs' claim that they acquired title by adverse possession and (2) the referee was clearly erroneous in his determination of plaintiffs' claim that they took title under a deed, unrecorded and lost, conveying the land in question to plaintiffs' record predecessor in title, one Daniel Gauthier.

We deny the appeal and affirm the judgment of the Superior Court.

The land in controversy is situated in the Town of Waterboro, and its pertinent history is as follows. In 1944 the Town had assessed the taxes on the land to Gerald F. Cressey (now deceased) husband of defendant Ida Cressey. In 1946–47, apparently relying on information that Daniel Gauthier had become the owner of the land, the Town assessed the taxes to him. When the taxes remained unpaid, the Town filed and recorded two tax liens against the land, and they have never been discharged. Plaintiffs, who lived close to the land in question, became interested in it during the 1950's. They posted it against trespassing for twenty-three years. Having become aware of a deed, the last one recorded, which had conveyed the land to Gerald Cressey, plaintiffs made further inquiry. They were told by

defendant Ida Cressey that she believed her husband had given a deed of the land to one whom she remembered only as a "Biddeford Frenchman."

On September 12, 1975 plaintiffs instituted the instant action in the District Court, District Ten, Division of Western York, to quiet and to establish title, pursuant to 14 M.R.S.A. § 6651. In October, 1975, on motion of one of the defendants, the action was removed to the Superior Court.[1] In November of 1976 a guardian ad litem was appointed to represent persons unknown having a possible interest in the land.

Late in 1976 or early in 1977 plaintiffs found the "Biddeford Frenchman" who, it turned out, was Daniel Gauthier. He had built a camp on the land which burned in 1947 and thereafter Gauthier never returned to the land. Although no deed of record conveyed the land to Gauthier and he could find no unrecorded deed making such conveyance, Gauthier on January 24, 1977, executed a release deed of the land to the plaintiffs.

After a motion filed by defendant Ida Cressey seeking summary judgment in her favor had been denied, in August, 1977, the plaintiffs filed a pretrial memorandum stating that the case involved two issues: (1) whether defendant Ida Cressey's late husband, Gerald, had "bargained and sold" the land in dispute to Daniel Gauthier, and (2) whether plaintiffs had acquired title to the land by adverse possession.

Following a pretrial conference held January 3, 1978, the presiding Justice entered a pretrial order. It said that the case was to be tried by jury and added the following statement regarding issues:

> "Issue of adverse possession not being pressed by . . . [plaintiffs]. Issue of ownership by virtue of record title passing from defendant Cressey (and/or spouse) to . . . [plaintiffs] by transfer to Daniel Gauthier (unrecorded) and conveyance to . . . [plaintiffs] by Gauthier."

1. Plaintiffs named the Town of Waterboro as one of the defendants. On December 3, 1975 the Justice then presiding in the Superior Court granted the Town's motion to dismiss the ac-

The parties subsequently waived trial by jury and agreed upon a reference of the case, and an order of reference issued.

Early in the hearing before the referee, opposing counsel engaged in a colloquy about the status in the case of the issue of title by adverse possession. Counsel for defendants maintained that plaintiffs had relinquished the issue and that it was entirely out of the case. One of plaintiffs' attorneys responded:

> "I would indicate that our primary grounds for moving forward, your Honor, is the title through Mr. Gauthier as it relates to Mrs. Cressey. We are not . . . waiving the adverse possession portion . . . as against the world. And I believe in the pretrial it is so indicated that this was a primary grounds for the case. And I didn't mean to indicate there was an abandonment or dismissal of the other portion of the pleadings. I think it is in issue here today."

Apparently interpreting this statement by plaintiffs' attorney as a contention that the issue of title by adverse possession was to be considered at the reference hearing, the referee remarked that he would admit evidence on that issue. However, counsel for plaintiffs did not thereafter offer evidence for the purpose of proving title by adverse possession. Instead, when he offered evidence that seemed to relate to adverse possession, and counsel for defendants objected, plaintiffs' counsel explained that he was offering the evidence merely as background matter to assist in the proof of title in plaintiffs through an unrecorded, and lost, deed.

In his report the referee concluded that three issues had been raised before him for determination, one of which was whether plaintiffs had acquired title by adverse possession. Explaining further, the referee said:

> tion as to it for failure of the complaint to state a claim against it for which relief could be granted, and the Town was removed as a party defendant.

"The Plaintiffs contend that the issue of adverse possession not being pressed was not to mean that they had abandoned the issue and they were permitted over objection to introduce evidence and proof thereof."

After setting forth the relevant facts and discussing the law, the referee decided:

"The Plaintiff[s] ha[ve] failed to prove by a fair preponderance of the evidence:

"(1) That Gerald Cressey ever executed and delivered a deed of the premises under consideration to Daniel Gauthier.

"(2) That the Plaintiffs, and their grantors, had possession of the premises, actual or constructive, to create a presumption that a formal instrument of title once existed even though it cannot now be found.

"(3) That the Plaintiffs acquired title to the premises by adverse possession."

The referee therefore recommended entry of judgment for the defendants.

Defendants moved in the Superior Court for acceptance of the referee's report. Plaintiffs objected. One of their objections was:

"The issue of 'adverse possession' was *expressly deferred* in the pretrial order of January 3, 1978." (emphasis added)

At the hearing on the motion to accept, plaintiffs contended: (1) in concluding that plaintiffs had failed to prove a title by deed, the referee was clearly wrong because he did not give sufficient weight to the tax records of the Town of Waterboro showing a sale of the land in 1945 by Cressey to Gauthier; (2) by taking cognizance of the issue of title by adverse possession and purporting to decide the issue, the referee committed error of law since the pretrial order, while not entirely eliminating the adverse possession issue from the case, had placed it in "cold storage", so to speak, and had thereby "excluded" it from the scope of the reference proceeding.

The presiding Justice, who had written the pretrial order, apparently rejected plaintiffs' contention that the adverse possession issue had somehow been reserved for hearing and disposition in a proceeding other than the reference—as manifested by his acceptance of the referee's report and order of entry of judgment for defendants.

In their contentions on appeal the opposing parties agree on one point as the foundational premise of their respective arguments, that the referee was wrong in addressing and deciding the adverse possession issue because the pretrial order had removed it from his cognizance, and therefore the presiding Justice erred in accepting this part of the referee's report.

What remains critically in dispute between the adversary parties, however, is the reason why the pretrial order excluded the adverse possession question from the scope of the reference. Plaintiffs' position is that the language "issue of adverse possession not being pressed . . ." signified *not* that plaintiffs had surrendered it so that it was entirely out of the case but, rather, that the issue remained alive in the case "deferred" for separate hearing once the issue of title by deed had been resolved. The rationale for this procedure, according to plaintiffs, was that were there a decision in favor of plaintiffs on the title by deed issue, the question of title by adverse possession need not be reached. Defendants, on the other hand, maintain that the pretrial order established that plaintiffs had abandoned reliance on adverse possession as a basis for their claim of title, and therefore the issue was taken out of the case for all purposes.

■ Because the record discloses that during the course of the proceedings the parties and the referee took stances involving inconsistencies, we find it difficult to attribute to any of them a fully coherent approach. Nevertheless, we are persuaded of the correctness of one foundational proposition, on which the parties themselves do agree, namely, that the Superior Court Justice erred in accepting that part of the referee's report purporting to decide the issue of title by adverse possession. We, too, agree that the pretrial order meant, at minimum, that this issue was not within the scope of the trial to be held, whether it was

the jury trial mentioned in the pretrial order itself or the later reference which substituted for the jury trial the parties had waived.

■ Rule 16(c)(4) M.R.Civ.P. makes plain that absent, as here, anything in the order of reference to the contrary, the pretrial order

"control[led] the subsequent course of the action, unless modified at the trial to prevent manifest injustice."

A referee lacks even the residual power of a Justice presiding at a trial to modify the pretrial order "to prevent manifest injustice"; a referee can determine only those issues actually submitted to him by the pretrial order and the order of reference. *Boothbay Harbor Condominiums, Inc., v. Department of Transportation*, Me., 382 A.2d 848 (1978); *see* Rule 53(c) and (e)(1) M.R.Civ.P.; *Cunningham v. Cunningham*, Me., 314 A.2d 834, 840 (1974). Here, then, the statement in the pretrial order, "Issue of adverse possession not being pressed . . ." governed the "subsequent course of the action" including the reference, more particularly since the order of reference said nothing to the contrary.

Indeed, at a later stage of the reference hearing, the referee himself acknowledged that the pretrial order had removed the adverse possession issue from his cognizance. Defendant objected to the introduction of certain evidence on the ground, that "it was the order of the pretrial Judge that adverse possession was not to be an issue in this case." Then becoming more attentive, apparently, to the exact language of the pretrial order, the referee stated: "Well, then, that is eliminated." And thereupon

plaintiffs agreed to confine their presentation of evidence to that relevant to prove their claim of title by deed.

■ Moving beyond the point that the issue of adverse possession had been removed from the consideration of the referee, we must agree with defendants that the language "issue of adverse possession not being pressed . . ." is not fairly open, in all the circumstances here, to the interpretation urged by plaintiffs, that the pretrial order had the effect, pursuant to Rule 42(b) M.R.Civ.P.,[2] of reserving plaintiffs claim of title by adverse possession for a separate trial, or hearing, to follow after there had been a decision as to plaintiffs' claim of title by deed. We reject such interpretation because the record simply gives no indication (other than plaintiffs' argument at the reference hearing) that the presiding Justice made such a determination to separate "claims" or "issues."

■ No motions by either party for separate trials appear in the record. Although the court may order separate trials as to particular "claims" or "issues" on its own motion, Field, McKusick & Wroth, *Maine Civil Practice* 2d ed. § 42.5, a Justice's resort to such procedure would be the exception to what is already an exception.[3] Furthermore, this case does not involve any of the numerous circumstances noted in either Field, McKusick & Wroth, *supra*, at § 42.6 or *Moore's Federal Practice* to illustrate the factors, or circumstances, justifying an order for separate trials of issues, such as: issues of liability and damages; non-jury and jury issues; legal and equitable issues; where evidence to support one claim may result in prejudice to a party on another

---

2. Rule 42(b) M.R.Civ.P. states:

"*(b) Separate Trials.* The court in furtherance of convenience or to avoid prejudice may order a separate trial in the county where the action is pending or a different county of any claim, cross-claim, counterclaim, or third-party claim, *or of any separate issue or of any number of claims,* crossclaims, counterclaims, third-party claims, or *issues.*" (emphasis added)

3. This exceptional nature of the separate trial order is noted in Professor Moore's discussion

of the analogous Rule 42(b), F.R.Civ.P. After recognizing that separate trials of various claims or issues are allowed in federal practice (as in Maine practice) "in furtherance of convenience or to avoid prejudice", he adds:

"Nevertheless, a single trial generally tends to lessen the delay, expense and inconvenience to all concerned, and the courts have emphasized that separate trials should not be ordered unless such a disposition is *clearly necessary.*" (emphasis added) 5 *Moore's Federal Practice* ¶ 42.03 (1979).

claim; where one issue can be ready for trial immediately, and another more complicated issue involving more and different witnesses would take much longer to prepare; where there is an affirmative defense—such as release of liability, res judicata, statute of frauds or statute of limitations—which if sustained would dispose of the action. Even accepting plaintiffs' argument that if its claim of title by deed should be sustained, that would avoid need to consider adverse possession, we cannot fairly conclude, absent a plainer indication than appears in this record, that the presiding Justice must have deemed that consideration so weighty that he acted on his own motion to order separate trials as to the two claims. We think, rather, that in the particular circumstances here, such action by the presiding Justice would have been most unusual, if not strange. There is a substantial identity of the parties and the witnesses; the evidence is overlapping; neither of the two issues involves great complexity; there is no indication that appreciably less time would be required for the proof of the deed claim than for the proof of the adverse possession claim; and we can discern no prejudice to either party from having the claims tried together.

In sum, the record discloses neither a motion for a separate trial as to each claim nor any good reason to grant separate trials had such a motion been made. True, the pretrial order would have been plainer had it stated: "issue of adverse possession abandoned", rather than "not being pressed." Yet, since the pretrial order governs "the subsequent course of the action", the objective meaning of the language used in the order must be taken to be that the issue of adverse possession was entirely removed from the case, so that there would be *no trial whatever* of adverse possession in the action instituted by plaintiff's complaint to quiet title filed on September 12, 1975.

This interpretation is further supported by the action of the Superior Court Justice in ordering entry of "judgment for the defendants." That judgment disposed of *all* issues in the case, and, indeed, that is why it was an appealable judgment.[4]

■ In their reply brief on appeal plaintiffs gingerly suggest that this Court should interpret the pretrial order to provide "in effect" that plaintiffs took a "voluntary dismissal without prejudice" of their claim of title by adverse possession, under Rule 41(a) M.R.Civ.P.

The suggestion is plainly unacceptable. Assuming, strictly arguendo, that such a "dismissal" under Rule 41 could have been possible in this case, we find no indication whatever in the record that this is what actually occurred. There was no action by plaintiffs themselves to achieve a voluntary dismissal under Rule 41(a)(1); plaintiffs filed neither a notice of dismissal nor a stipulation of dismissal signed by all parties. It would be most unusual, indeed, that such a voluntary dismissal before the commencement of trial would be effected only through the instrumentality of an "Order of the Court", under Rule 41(a)(2).

In addition, "dismissal" is a term of art in the Rules. Hence, were it the Court's determination to effect a voluntary dismissal of a particular claim, without prejudice, by acting on its own motion to make an order, we find it difficult to conceive that the Court would fail to use the word "dismissal" and would speak of the *plaintiffs* as the actors "not . . . press[ing] the issue of adverse possession."

Finally, the statements and actions of plaintiffs' counsel at the reference hearing and in the briefs on appeal are inconsistent with their ever having believed, until they made the suggestion in their reply brief, that the pretrial order embodied a voluntary dismissal, without prejudice, of plaintiffs' claim of title by adverse possession.

4. Were it the Justice's thought to permit the correctness of the referee's decision on the issue of title by deed to go forward on appeal while the issue of adverse possession was being "reserved" for later disposition, the way to accomplish that objective would have been to proceed in accordance with Rule 54(b) M.R. Civ.P., rather than to order entry of "judgment for defendants."

**546**

At the hearing before the referee counsel for the plaintiffs explicitly stated:

> "And I didn't mean to indicate there was an abandonment *or dismissal* of the other portion of the pleadings." (emphasis added)

In their main brief on appeal, plaintiffs requested that:

> "The Referee's Report . . . be set aside and the matter *remanded* to the Superior Court for a new trial on *both* issues."

A remand on the issue of adverse possession would of course be inappropriate if that issue were out of the case by a voluntary dismissal of it without prejudice. To have a trial on that issue, if there had been a voluntary dismissal of it without prejudice, plaintiffs would be obliged to file a new complaint.

■ We turn to the merits of the issue of plaintiffs' title by deed. We reject plaintiffs' contention that the referee's decision of that issue must be overturned. The findings of fact were not clearly erroneous, and we find no error in the referee's application of the law to those facts or in his conclusion that plaintiffs failed to prove by a preponderance of the evidence that they had title by deed. The presiding Justice thus acted correctly in accepting the referee's report insofar as it decided the issue of title by deed against plaintiffs and in favor of defendants.

It therefore eventuates that even though the Superior Court should not have accepted the referee's report in its entirety but should have rejected the portion of it purporting to decide the issue of adverse possession, that error is harmless. Since (1) the adverse possession issue had been relinquished by plaintiffs so as to leave in the case *only* the issue of plaintiffs' title by deed, and (2) the Superior Court Justice was correct in accepting the referee's decision in favor of defendants on the title by deed issue, the entirety of the case had been correctly decided against plaintiffs, and the entry of a judgment for defendants was in order. We therefore affirm the judgment of the Superior Court.

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.