2001 ME 24

**Estate of Pearl McCORMICK.**

Supreme Judicial Court of Maine.

Argued: Oct. 3, 2000.

Decided: Jan. 31, 2001.

Robert Edmond Mittel, Esq., (orally), Mittel, Asen, Hunter & Cary, LLC, Portland, James E. Mitchell, Esq., (orally), Jim Mitchell and Jed David, P.A., Augusta, for appellant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

DANA, J.

[¶ 1] Mark Lukas appeals from judgments entered in the York County Probate Court (*Nadeau, J.*) in favor of Lorraine Bowdoin, the personal representative of Pearl McCormick's estate. On appeal, Lukas contends that: (1) his motion for reference should have been granted because allowing part-time probate judges to maintain active probate practices denied him due process of law; (2) the Probate Court erred in ordering him to pay Bowdoin's attorney and personal representative fees, and in denying his request for attorney fees; (3) he should not have been sanctioned, pursuant to M.R. Civ. P. 37, for asserting the attorney-client privilege during a deposition; (4) the judgment disallowing the holographic will should have been vacated; and (5) the Probate Court abused its discretion by ordering separate trials. We agree that the Probate Court erred in requiring Lukas to pay Bowdoin's attorney and personal representative fees. In all other respects we affirm.

## I.  CASE HISTORY

[¶ 2] The record supports the following facts: In 1976, Mark Lukas and his wife Suzanne purchased a home in Kennebunk across the street from Mearl Stiller. The Lukases and Stiller became close friends, and in late 1988, Mark Lukas agreed to serve as Stiller's guardian. Stiller had previously created an inter vivos trust naming her sister, Pearl McCormick, beneficiary. Stiller died in January 1989, and McCormick became the owner of the trust's equities, valued at approximately $300,000. Lukas was appointed guardian and conservator for McCormick in February 1989.

[¶ 3] Throughout 1988 and 1989, McCormick had urged her attorney, Stephen Hodsdon, to draft a will on her behalf. Despite McCormick's requests, Hodsdon never drafted the will because he questioned McCormick's testamentary capaci-

ty.[1] In October 1989, however, Lukas and his wife assisted McCormick in drafting a holographic will. The will provided that $40,000 be given to an English relative of McCormick's deceased husband, with the remainder going to the Lukases.

[¶ 4] McCormick died in January 1997. Mark Lukas began to close the conservatorship estate, and Hodsdon drafted an affidavit to assist Lukas with the closing. The Lukas affidavit provided that McCormick had no living relatives. Lukas closed McCormick's bank account and retained the balance of that account, $895, as a fee for unpaid services. Lukas admits that he overcharged McCormick for his conservatorship services by approximately $90,000, and he has placed $90,000 in an escrow account to cover those overcharges.

[¶ 5] In June 1997, Lorraine Bowdoin, McCormick's cousin, was appointed personal representative of McCormick's estate. James Mitchell entered his appearance as Bowdoin's counsel in September 1997. At that time Attorney Mitchell served, and continues to serve, as Probate Judge in Kennebec County.

[¶ 6] Lukas, through his counsel James Young, filed McCormick's holographic will in October 1997. Young testified that Lukas had a "clear statutory duty" to file the holographic will. In November 1997, Lukas filed an inventory and accounting of his conservatorship, and a petition to probate the holographic will and for him to be appointed the personal representative. Bowdoin filed objections to the inventory, the accounting, and the petition for probate.

[¶ 7] Approximately one year later, Bowdoin filed a motion for separate trials regarding the inventory dispute, the accounting dispute, and Lukas's claim for extra fees against the estate. In early December 1998, Bowdoin testified at her deposition that she had met with McCormick in June 1989, and that McCormick discussed

making a will. On December 14, 1998, the court entered an order dismissing with prejudice Lukas's petition to probate the holographic will because Lukas had voluntarily abandoned the petition. One week later, Bowdoin filed a motion seeking recovery from Lukas directly for her attorney and personal representative fees incurred during the holographic will contest.

[¶ 8] In March 1999, the court granted in part Bowdoin's motion for separate trials by ordering successive inventory and accounting trials. Approximately one month later, Lukas filed a motion for appointment of a referee pursuant to M.R. Prob. P. 53. Lukas sought a reference of the inventory dispute, the accounting dispute, and Bowdoin's request for attorney and personal representative fees, contending that a reference would be expeditious and would ameliorate the due process concerns raised by Attorney Mitchell's appearance before a fellow probate judge. The court denied Lukas's motion for reference in May 1999. The court subsequently reconsidered that order, affirmed its denial of a reference as to the attorney fees and inventory trials, but granted a reference on the accounting trial.

[¶ 9] Attorney Young was scheduled to be deposed in May 1999, in preparation for the fees trial, but Lukas refused to allow him to testify without an agreement between the parties regarding a limited waiver of the attorney-client privilege. Because the parties could not reach agreement on the limited waiver, the deposition was terminated after only ten minutes. Bowdoin then filed a motion to compel discovery and to award expenses pursuant to M.R. Civ. P. 37, which the court granted in the amount of $3,690.02.

[¶ 10] The attorney fees trial was held on May 18, July 6, October 26 and 27, and November 17, 1999. In December 1999, Lukas filed a motion to vacate the judgment disallowing the holographic will, claiming newly discovered evidence and

---

1. McCormick was eventually adjudicated to be incapacitated. The testimony and letters of three different doctors support this adjudication.

fraud based on Bowdoin's testimony during the fees trial. The court denied the motion. The next day, the court denied Lukas's motion for attorney fees, stating that Lukas's actions in offering the holographic will for probate were "dilatory and calculated to protect himself, rather than to benefit the estate." In January 2000, the court entered an order requiring Lukas to pay Bowdoin the $40,420 in attorney fees and $10,263 in personal representative fees Bowdoin incurred as a result of the will contest and attorney fees litigation. By subsequent amendment, Bowdoin's fee award was increased to $51,087. In March 2000, the court entered a judgment pursuant to M.R. Civ. P. 54(b) with respect to the order denying Lukas's motion to vacate the judgment disallowing the holographic will. This appeal followed.

## II. MOTION FOR REFERENCE

[¶ 11] Before discussing the merits of Lukas's claims, we first address Bowdoin's contention that the order denying Lukas's motion for reference is not ripe for appellate review. Bowdoin contends that the order is not a final judgment because two of the three trials addressed in the order have yet to take place. Ordinarily, an appeal is only cognizable if it arises from a final judgment. *See Millett v. Atl. Richfield Co.*, 2000 ME 178, ¶ 8, 760 A.2d 250, 253. Interlocutory orders that are not immediately appealable merge with a final decree and become appealable at that time. *See Boyle v. Share*, 377 A.2d 458, 462 (Me.1977) (stating that because "an interlocutory order is related to the main action, the rule allowing merger of the appeal from the order with the appeal from the final decree is well founded"). Although the order denying reference was not a final judgment, it nevertheless became appealable when it merged with the final judgment on the

fees trial and is therefore properly before this Court.

### A. M.R. Civ. P. 53(b)

[¶ 12] We review for an abuse of discretion a trial court's decision whether to appoint a referee. *See George D. Ballard, Builder, Inc. v. City of Westbrook*, 502 A.2d 476, 479 n. 4 (Me.1985); *Hedberg v. Wallingford*, 379 A.2d 126, 128 (Me. 1977).[2] The plain language of the rule establishes that absent an agreement of the parties, a motion for appointment of a referee is only granted in exceptional circumstances. *See Frank v. Assessors of Skowhegan*, 329 A.2d 167, 169 n. 3 (Me. 1974) (stating that "[b]efore any order of reference without agreement may issue, showing must be made some exceptional condition warrants reference").

[¶ 13] Lukas contends that all issues on appeal should have been referred because it is logistically difficult to try the issues in Probate Court over several nonconsecutive days. Lukas further asserts that witnesses are being forced to appear several more times in the remaining trials, rather than having the convenience of appearing once before a referee on all matters over an estimated two week period. Accordingly, Lukas contends that the burden placed on the parties and witnesses by separate trials in the Probate Court create precisely the exceptional condition envisioned by Rule 53(b)(2).

[¶ 14] Lukas directs our attention to a series of cases in which we approved a reference. *See George D. Ballard, Builder, Inc.*, 502 A.2d at 479 n. 4; *Bruk v. Town of Georgetown*, 436 A.2d 894, 896–97 (Me.1981); *Hedberg*, 379 A.2d at 127–28. Because the parties agreed to a reference in each of those cases, however, we did not address the restrictive language of Rule

**2.** M.R. Civ. P. 53(b)(2), incorporated by reference into M.R. Prob. P. 53, provides that "[i]n absence of agreement of the parties, a reference shall be the exception and not the rule.

[I]n an action to be tried without a jury, save in matters of account, a reference shall be made only upon a showing that some exceptional condition requires it."

53(b)(2).[3]  Here, because the parties did not agree to the reference, Lukas first bears the burden of establishing that this case involves an exceptional condition, and if so, that the court abused its discretion in denying the reference.  Although the length of the trials and relative inconvenience to the parties and witnesses may constitute an exceptional condition, we cannot conclude that the court abused its discretion in denying Lukas's motion for reference based on the logistical difficulties of trying the case in the Probate Court.  *See, e.g.,* 1 FIELD, MCKUSICK & WROTH, MAINE CIVIL PRACTICE § 53.1 at 698 (2d ed.1970) (stating that in the "absence of agreement by the parties, the rule puts a tight damper on appointment of referees").

### B.  Due Process

■ [¶ 15] Lukas also contends that his due process rights were violated because denying his motion for reference necessarily permitted Attorney Mitchell to appear as Bowdoin's counsel before a fellow probate judge.  According to Lukas, an unfair advantage inures to the litigant represented by a judge, with a correlative disadvantage to the adverse party, when, as here, a probate judge with years of service on the bench appears as a lawyer before another probate judge who is comparatively new to the bench and who may someday appear before the advocate-judge now before him.  Although we understand Lukas's concern, we do not believe the situation rises to the level of a constitutional due process deprivation in the circumstances of this case.

[¶ 16] The practice of allowing part-time probate judges to litigate cases as part-time lawyers has received widespread criticism.[4]  The criticism focuses on 4 M.R.S.A. § 307 (Supp.2000), which explicitly authorizes probate judges to maintain active probate practices.[5]  Lukas has not challenged the constitutionality of that provision.  Moreover, the principal case Lukas relies on, *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986), recognizes that issues involving potential judicial bias or prejudice rise to a constitutional level "only in

---

3.  Lukas also relies on *Edwards v. Hall,* 141 Me. 239, 42 A.2d 340 (1945), which suggests that a reference is proper to resolve complex issues involving a voluminous record.  The opinion does not disclose, however, whether the parties agreed to the reference.

4.  *See* COMMISSION TO STUDY THE FUTURE OF MAINE'S COURTS, REPORT TO THE 116th LEGISLATURE 72 (Feb. 28, 1993) (recommending the appointment of four full-time probate judges and stating that the "Probate Court system in Maine has been challenged for the appearance of impropriety conveyed by the presence of part-time judges who are not restricted from practicing law in the communities in which they serve"); COMMISSION TO STUDY FAMILY MATTERS IN COURT, FINAL REPORT TO THE 112TH LEGISLATURE 10–11 (March 1986) (noting the "serious potential conflict of interest existing when part-time probate judges are also part-time practicing attorneys"); COMMITTEE ON JUDICIAL RESPONSIBILITY AND DISABILITY, ANNUAL REPORT TO THE SUPREME JUDICIAL COURT OF THE STATE OF MAINE 21 (1984) (noting that the "practice of law by part-time probate judges ... continues to create an appearance of impropriety in many people's minds"); MAINE PROBATE LAW REVISION COMMISSION, REPORT TO THE 109th LEGISLATURE 8–10 (Feb. 21, 1980)

(describing the system as "ethically uncomfortable and undesirable," and recommending that the situation be resolved by transferring probate jurisdiction to the Superior Court).  One committee even recommended an outright prohibition of the practice:

This is a situation which, in the committee's view, should no longer be allowed to continue.  Just as Maine has worked toward the elimination of similar kinds of unhealthy conflicts of interest in the past by eliminating the part-time municipal judge positions and the part-time nature of the former county attorney positions, so should this conflict of interest situation be eliminated in the case of our part-time probate judges.

COMMITTEE FOR THE STUDY ON COURT STRUCTURE IN RELATION TO PROBATE AND FAMILY LAW MATTERS, REPORT TO THE JUDICIAL COUNCIL 4 (Jan. 18, 1985).

5.  Section 307 provides, in pertinent part, that "[a] judge is considered to be interested in an estate or other probate proceeding ... if the judge ... represents a party in the proceeding.  When such representation begins, the judge shall transfer the matter as provided in this section, after which transfer the judge ... may continue such representation."

the most extreme of cases," and thus are more appropriately addressed by the policy decisions of state legislatures. *Id.* at 821–22, 106 S.Ct. 1580. The Maine Legislature has addressed this issue and has continued to allow probate judges to maintain active probate practices.

[¶ 17] Finally, we need not decide on these facts whether a due process deprivation occurs when a probate judge has a case pending before counsel and refuses either to recuse himself or grant a timely motion for reference. Lukas never sought Judge Nadeau's recusal, and Lukas concedes that no direct conflict existed because Judge Nadeau did not have a case pending in Judge Mitchell's court while this case has been pending. Moreover, Lukas's motion for reference was untimely because by the time it .was filed, Judge Nadeau had already addressed the substance of the matter.[6] Lukas has not established that the asserted appearance of impropriety is sufficient to give rise to a due process claim. Accordingly, we conclude that the court did not abuse its discretion in denying Lukas's motion for reference on the ground of due process.

### III. ATTORNEY/PERSONAL REPRESENTATIVE FEES

A. Bowdoin's Motion For Attorney/Personal Representative Fees [7]

[¶ 18] Title 18–A M.R.S.A. § 1–601 (1998) provides, in pertinent part, that "[i]n contested cases in the original or appellate court of probate, costs may be allowed to either party, including ... at-torney's fees, to be paid to either or both parties, out of the estate in controversy, as justice requires." In "determining whether the Probate Court has exceeded the authorization of [section 601], this Court employs an error of law standard of review." *Estate of Wright,* 637 A.2d 106, 109 (Me.1994) (citing *Estate of Stowell,* 595 A.2d 1022, 1026 (Me.1991)). We defer to the Probate Court's findings of fact unless such findings are clearly erroneous. *See Estate of Plummer,* 666 A.2d 116, 118 (Me. 1995).

[¶ 19] Despite Bowdoin's contentions, section 601 does not authorize a surcharge for attorney fees incurred by a personal representative in contesting a holographic will. Rather, section 601 allows a party to recover fees from "the estate in controversy, as justice requires." Although Bowdoin may seek recovery of her fees from the estate, the statute does not authorize the surcharge of fees against opposing litigants.

[¶ 20] In the absence of a statute or some exception recognized at common law, the American Rule provides that parties to litigation pay their own attorney fees. *See Linscott v. Foy,* 1998 ME 206, ¶ 17, 716 A.2d 1017, 1021; *Colquhoun v. Webber,* 684 A.2d 405, 413 (Me.1996) (stating that the American Rule provides that "absent a statutory provision or contractual agreement litigants bear their own attorney fees and litigation costs"). Bowdoin contends that because Lukas was a fiduciary of the estate, and because Lukas acted in bad faith toward the estate while a fiduciary, equitable principles permit

---

6. To realize its intended effect, Lukas's motion for reference needed to be filed well in advance of when it was filed. Attorney Mitchell began representing Bowdoin in September 1997. In November 1997, Lukas filed a petition to probate the holographic will. In December 1998, the court entered a judgment dismissing with prejudice Lukas's petition. In April 1999, Lukas filed the motion for reference. Therefore, Lukas's motion for reference postdated Mitchell's appearance by more than a year and a half, and postdated the dismissal of the holographic will by more than four months. Thus, if Lukas sought a reference to ameliorate his due process concerns, as he alleges, the motion should have been filed when those due process concerns arose, not after a substantial portion of the litigation had been completed.

7. Because Bowdoin's claims for attorney and personal representative fees are premised on the same theory, we review the claims simultaneously.

Bowdoin to recover her attorney and personal representative fees directly from Lukas. *See Estate of Whitlock,* 615 A.2d 1173, 1178–79 (Me.1992) (affirming a surcharge for attorney fees and costs against a personal representative where trial court determined that he had abused his fiduciary powers and failed to represent the estate in good faith). Lukas responds that he cannot be surcharged as a fiduciary because he was not a fiduciary when he offered the will for probate. Thus, Lukas contends that 18–A M.R.S.A. § 5–249(d) (1998) does not apply because his conservatorship terminated at McCormick's death.[8] *See Estate of Mouckerezi,* 468 A.2d 993, 995 n. 1 (Me.1983) (noting in dicta that a conservator's obligations to "prosecute or defend actions, claims or proceedings ... for the protection of estate assets" terminates at the death of the protected person).

[¶ 21] Despite Lukas's assertions, the court properly concluded that Lukas remained a fiduciary of the estate during the holographic will contest. Lukas acknowledges that he owed money to the estate for his conservatorship overcharges. On McCormick's death, Lukas had a statutory obligation to retain the estate for delivery to the personal representative. *See* 18–A M.R.S.A. § 5–425(e) (1998). Lukas has not delivered the estate to Bowdoin because the overcharge still rests in an escrow account. In addition, Lukas had a duty to file an inventory and accounting within 90 days of his appointment as guardian and conservator. Lukas, however, was tardy in filing the inventory and accounting by more than eight years, and litigation on those issues is pending. Because Lukas owes the estate money as a result of his conservatorship, and because his conservatorship duties have not been fully resolved, we conclude that the court's finding that Lukas remained a fiduciary of the estate during the will contest was not clearly erroneous.

[¶ 22] Lukas next contends that even if he remained a fiduciary of the estate, he was not acting in his fiduciary capacity when filing and offering the holographic will. In this case, Lukas occupied the dual role of conservator and beneficiary. Each role has distinct rights and obligations with regard to Lukas's conduct toward the estate. Whether a fiduciary breaches his fiduciary duty when he engages in conduct appropriate in his nonfiduciary role arises in other contexts. For instance, the issue arises when an individual occupies the dual role of shareholder and officer of a corporation. Whereas a shareholder may act to maximize the value of his shares, an officer owes a duty of care and loyalty to the corporation and its shareholders. *See* 13–A M.R.S.A. § 716 (Supp.2000) (duty of corporate directors and officers). These two interests may not always converge, and the law, in contemplation of divergence, recognizes that situations may arise when although the officer role requires an unfettered, unmitigated duty of loyalty, the shareholder role simultaneously permits the individual to act in his or her own self-serving interest. *See Northeast Harbor Golf Club, Inc. v. Harris,* 1999 ME 38, ¶ 25, 725 A.2d 1018, 1025 (discussing corporation's burden in establishing a conflict of interest in a transaction where the corporation's president purchased real estate abutting the corporation's property).[9] Applying this principle to the present matter suggests that Lukas was not precluded from filing and offering the holographic will because he occupied the role of conservator. Rather, as beneficiary, Lukas had a natural

---

**8.** Section 5–249(d) permits questions of liability between the estate and the conservator to be determined in a proceeding for surcharge.

**9.** Although the *Northeast Harbor* Court concluded that the corporation's president usurped a corporate opportunity by purchasing the real estate, it nevertheless recognized that the president, in her individual capacity, could have engaged in such a commercial transaction if she had provided full disclosure to the corporation. *See id.* ¶¶ 12 & 13, 725 A.2d at 1022.

interest in having the will probated, and Bowdoin has not established that the will was filed and offered by Lukas in his role as conservator. Accordingly, we conclude that Lukas filed and offered the will in his capacity as beneficiary, and that such filing and offering does not offend any fiduciary obligations he owed as conservator.

[¶ 23] Finally, Lukas contends that even if he was a fiduciary of the estate and was acting in his fiduciary capacity when filing and offering the will, his conduct in filing the holographic will in court and offering it for probate was neither a breach of any fiduciary duty he owed the estate nor did it constitute "bad faith" for purposes of the bad faith fiduciary exception to the American Rule. *Cf. Estate of Whitlock,* 615 A.2d at 1178–79. Although the Probate Court made no finding that Lukas's offer and petition to probate the will was a breach of his fiduciary duties to the estate, the court did find that Lukas demonstrated bad faith by filing and offering the will for probate with the knowledge that McCormick lacked testamentary capacity. In addition, the court made several subsidiary findings to support its determination that Lukas exhibited bad faith. For instance, the court determined that Lukas protracted the fee dispute and noted that Bowdoin was forced to file a motion to compel discovery. The record establishes, however, that Lukas responded in a timely fashion to Bowdoin's voluminous discovery requests, only a fraction of which related specifically to the probating of the will. Moreover, the evidence establishes that the fees trial extended over a five day period because Bowdoin, with the court's approval, elicited testimony regarding both Lukas's conduct as conservator and the inventory of the estate. Such testimony was not relevant to Lukas's filing or offering the will. Nevertheless, the court relied on that evidence as the principal means of establishing Lukas's bad faith. Pursuant to the court's own separation order, that evidence was distinct from the narrow issue on which the fee award was actually sought; that is, Lukas's conduct in filing and probating the will.

[¶ 24] Bowdoin also contends that Lukas's bad faith was evidenced by his failure to disclose, when the will was filed, the doctors' letters addressing McCormick's testamentary capacity. However, Lukas had no obligation to disclose that evidence until Bowdoin contested the will. Moreover, the fact that Lukas filed the holographic will at the insistence of counsel, and the fact that he voluntarily abandoned the petition on the advice of counsel, mitigate any finding of bad faith. Viewed in the aggregate, we cannot conclude that the evidence supports a finding of bad faith.

[¶ 25] For all the reasons discussed above, we conclude that the Probate Court erred in allowing Bowdoin to recover fees incurred as a result of the will contest, and therefore we vacate that award.[10]

### B. Lukas's Motion For Fees

[¶ 26] Lukas contends that the court abused its discretion in denying his motion for attorney fees incurred during the will contest. In denying the motion,

10. As an additional theory on which to base the fee award, Bowdoin relies on M.R. Prob. P. 54(d), which authorizes an award of attorney fees and costs in the event of a "frivolous or malicious claim or objection." Lukas erroneously asserts that this Court lacks the authority to enforce such a rule. *See Anderson v. Elliott,* 555 A.2d 1042, 1047 (Me. 1989) (stating that the "Supreme Judicial Court in its rulemaking capacity binds not only the bar and all other courts; these rules also have the full force of law in our delibera- tions as the Law Court"). This Court has the authority to promulgate rules aimed at controlling pleading practice and procedure. *See State v. Kelly,* 376 A.2d 840, 844 (Me.1977). M.R. Prob. P. 54(d)(1) controls pleading practice by awarding costs to a prevailing party on a frivolous claim. However, because the Probate Court did not find that Lukas's claim was frivolous or malicious, Bowdoin may not recover pursuant to rule 54(d) in the circumstances of this case.

the court stated that Lukas's actions in offering the holographic will for formal probate were "dilatory and calculated to protect himself, rather than to benefit the estate." In *Estate of Voignier*, 609 A.2d 704 (Me.1992), we clarified the section 601 phrase "as justice requires" by concluding that an award of fees is warranted when the litigation in question "benefitted the estate." *Id.* at 708. The policy rationale for allowing recovery of fees and costs pursuant to this standard is to discourage speculative claims or nuisance actions. *See Estate of Wright*, 637 A.2d at 110.

■ [¶ 27] In this case, Lukas was aware that when the holographic will was drafted, McCormick's testamentary capacity was highly questionable. Nevertheless, he allowed McCormick to draft the will, petitioned for formal probate of the will, and then voluntarily abandoned that petition when he realized its validity would not withstand scrutiny. Because Lukas was aware that the validity of the will was speculative, the court did not abuse its discretion in denying Lukas's request for fees. *See id.* at 109–10.[11]

## IV. SANCTIONS

■ [¶ 28] We review for an abuse of discretion a trial court's imposition of sanctions for discovery violations. *See Harris v. Soley*, 2000 ME 150, ¶ 9, 756 A.2d 499, 504; *Pelletier v. Pathiraja*, 519 A.2d 187, 190 (Me.1986) (stating that pursuant to this standard, we "shall not lightly

overrule the trial court's choice of sanctions").[12] In *Pelletier*, we recognized that "Rule 37 is a flexible rule for the trial courts and its only literal limitation is that the exercise of discretion must be just." *Id.* at 190 (internal quotation omitted).[13] In determining the scope of a sanction for discovery violations, the trial court should consider "the effect pretrial violations have on the adverse party and also evaluate the purpose the sanctions are to serve." *Longley v. Knapp*, 1998 ME 142, ¶ 7, 713 A.2d 939, 942 (quoting *Employee Staffing of Am. v. Travelers Ins. Co.*, 674 A.2d 506, 508 (Me.1996)). *See Soley*, 2000 ME 150, ¶ 10, 756 A.2d at 505 (stating that sanctions may serve to remedy the effects of noncompliance, to deter similar conduct by the offending party, or to penalize the noncompliant party). In this case, the court imposed sanctions because Lukas refused to allow the deposition of Attorney Young to proceed without an agreement that his testimony would not constitute a wholesale waiver of the attorney-client privilege.

[¶ 29] At Lukas's first deposition, Attorney Mitchell asked Lukas: "Why did you then not file [the holographic will] after [McCormick's] death until you chose to do so?" Lukas's counsel objected on the ground of attorney-client privilege and Lukas refused to answer the question. At Lukas's second deposition, Attorney Mitchell asked a similar question and Lu-

---

11. Bowdoin also requests that we remand this matter and order a surcharge for fees and costs of defending this appeal. Because we cannot conclude that Lukas's appeal lacked any "reasonable likelihood of success," indeed he was successful in part, Bowdoin's request is denied. *Heikkinen v. Cote*, 2000 ME 1, ¶ 3, 742 A.2d 942, 943.

12. We generally apply a higher level of scrutiny only in those instances where the sanction imposed resulted in dismissal of a claim or cause of action. *See Soley*, 2000 ME 150, ¶ 9, 756 A.2d at 504; *Saucier v. State Tax Assessor*, 1998 ME 61, ¶ 6, 708 A.2d 281, 283.

13. Rule 37 provides, in pertinent part:

(a)(2) *Motion.* If a deponent fails to answer a question propounded ... the discovering party may move for an order compelling an answer ... in accordance with the request.
....

(a)(4) *Award of Expenses of Motion.* If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion ... to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

kas's counsel stated that "[b]efore he answers that ... at the end of the last deposition you had come to this point and I told you I needed to think about what to do about his interactions with Jay Young ... and I'm prepared to waive the privilege as far as that's concerned." Later in that deposition, Lukas stated that he relied on the advice of Attorney Young in making his decision to probate the will.

[¶ 30] At the deposition of Attorney Young, Lukas's counsel refused to allow Young to answer Attorney Mitchell's questions. The Young deposition lasted only ten minutes, and Attorney Mitchell asked only two substantive questions. Attorney Mitchell first asked: "Can you tell me what Steve Hodsdon told you when you first talked to him about this case, that is, the case of the Estate of Pearl McCormick?" Lukas's counsel objected on the basis of both the attorney-client privilege and the work product rule. Mitchell then asked: "Mr. Young, did you advise Mark Lukas to file a petition to probate an alleged holographic will in 1997 or 1998 in the York County Probate Court?" Lukas's counsel objected on the ground of attorney-client privilege, Young refused to answer, and the deposition was terminated.

[¶ 31] When the court imposed sanctions, it determined that Lukas had waived "any right he had to assert the attorney/client privilege regarding evidence concerning why Lukas waited until he did before filing an alleged holographic will of the decedent for probate." No evidence suggests, and the court did not determine, that Lukas had fully waived the privilege with respect to communications he had with Young concerning issues not related to the filing of the will.

[¶ 32] On appeal, Lukas contends that his objections at Young's deposition were substantially justified as a matter of law because Young was bound by the attorney-client privilege. As such, Lukas claims, Young was permitted to answer questions regarding only the probating of the will.

Bowdoin, however, refused to recognize the limited waiver and contended that Lukas had fully waived the privilege by virtue of his reliance on the advice of counsel defense.

[¶ 33] M.R. Evid. 510 provides that "[a] person upon whom these rules confer a privilege against disclosure waives the privilege if the person ... voluntarily discloses ... any significant part of the privileged matter." Lukas voluntarily disclosed that he relied on the advice of counsel in deciding to file the holographic will for probate. It would have been unjust for the court to allow Lukas to waive the privilege by claiming a reliance on advice of counsel, but preclude Bowdoin from discovering the substance of that advice during Young's deposition. *See* FIELD & MURRAY, MAINE EVIDENCE § 510.1 at 232 (2000 ed.) (stating that a client "should not be allowed to state the client's reliance on his or her lawyer's advice and then assert the client's privilege not to let the lawyer testify about the advice actually given").

[¶ 34] Applying these evidentiary principles to the present matter, we conclude that the court did not abuse its discretion in imposing sanctions. We see no basis for Lukas's assertion of the privilege with regard to the first question Mitchell asked. That question specifically asked what information Hodsdon, decedent's former counsel, provided to Young concerning the estate case. The question in no way implicated the Lukas–Young attorney-client relationship, and thus Lukas's assertion of the privilege was misplaced. Moreover, the second question specifically addressed the issue on which Lukas had previously waived his right to assert the privilege. Whether the waiver itself was partial or full is immaterial because the question was explicitly directed to Lukas's decision to probate the will. Young should have answered both questions posed by Mitchell because no privilege existed with respect to the answer to the first question and Lukas had no justification for assert-

ing the privilege with respect to the answer to the second question. Accordingly, the court did not abuse its discretion by imposing sanctions against Lukas for his refusal to allow the deposition of Young to proceed.[14]

## V.  MOTION TO VACATE

[¶ 35] Lukas contends that the court abused its discretion in denying his motion to vacate the judgment disallowing the holographic will. A party seeking relief pursuant to M.R. Civ. P. 60(b) bears the "burden of proving that the judgment should be set aside."[15]  *KeyBank Nat'l Ass'n v. Sargent*, 2000 ME 153, ¶ 13, 758 A.2d 528, 533 (citing *Beck v. Beck*, 1999 ME 110, ¶ 6, 733 A.2d 981, 983). A probate court's denial of a motion for relief from judgment is reviewed for an abuse of discretion. *See Estate of Shapiro*, 1999 ME 25, ¶ 14, 723 A.2d 886, 889. We will defer to the trial court's findings of fact unless such findings are clearly erroneous. *See Estate of Plummer*, 666 A.2d at 118.

[¶ 36] During the fees trial on October 27, 1999, the following colloquy occurred between Attorney Mitchell and Bowdoin with regard to the holographic will:

Mitchell: What was your reaction to the will itself and the likelihood that it was accurate?

Bowdoin:  I did not feel it was accurate.

Mitchell:  And why not?

Bowdoin:  Because she said she couldn't make a will for number one.

Mitchell:  She had told you that herself?

Bowdoin: Yes, she had told me that, and number two, my own thoughts at that time of $40,000 to Ruby McCormick, and she probably didn't know if she had anything left and just wanted him to pay the bills, and if there was some dollars left, then that would be left to he and his wife.

Several months prior to this exchange, Bowdoin testified at her deposition that she had met with McCormick in June 1989, and that McCormick discussed making a will. Lukas contends that analyzing these pieces of evidence collectively establishes that: (1) Bowdoin had knowledge of McCormick's testamentary intent in June 1989; (2) Bowdoin's knowledge of the intent was newly discovered by Lukas in October 1999; (3) Lukas had no way of discovering the new evidence prior to trial; and (4) Bowdoin's failure to disclose the information constituted misconduct. Moreover, Lukas contends that had he been aware of this evidence prior to December 14, 1998, he would not have consented to the court's dismissal of the holographic will petition. After a hearing on the issue, the court disagreed with Lukas's interpretation of the testimony and denied his motion to vacate.

[¶ 37] Lukas first contends that Bowdoin engaged in misconduct by concealing the fact that she knew McCormick's testamentary intent in June 1989. Thus, Lukas takes the position that the

---

14. Lukas alternatively contends that the amount of the sanction was excessive. *See Battryn v. Indian Oil Co.*, 472 A.2d 937, 941–42 (Me.1984) (affirming sanction in the amount of $500 where noncompliant party ignored court orders to answer interrogatories on three different occasions over an eight month period). Bowdoin initially requested sanctions in excess of $6,000, but the court awarded only $3,690.02. The court carefully scrutinized Bowdoin's bill, including and excluding certain portions thereof, and set forth an amount for each category including attorney fees, paralegal fees, expenses, and reduced personal representative fees. Based on this record, we cannot conclude that the court

abused its discretion in determining the amount of the sanction.

15. Rule 60(b) provides, in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party ....

phrase "at that time" refers to June 1989. Bowdoin, however, contends that the phrase refers to her 1999 opinion regarding McCormick's intent when McCormick drafted the holographic will in October 1989. If Lukas is correct that Bowdoin knew McCormick's testamentary intent in June 1989, Bowdoin arguably had a duty to disclose that intent on her appointment as personal representative. *See* 18–A M.R.S.A. §§ 3–701–703 (1998). If, however, the phrase merely refers to Bowdoin's October 1999 opinion regarding McCormick's 1989 intent, it cannot be established that Bowdoin knew McCormick's testamentary intent in 1989. Whether the testimony related to Bowdoin's June 1989 meeting with McCormick or Bowdoin's October 1999 opinion regarding McCormick's 1989 intent is a question of fact. We will not overturn the court's factual finding absent clear error. *See Estate of Plummer*, 666 A.2d at 118. We find none here.

[¶ 38] Lukas alternatively contends that he is entitled to relief from judgment because the October 1999 testimony constituted newly discovered evidence. In order for relief to be granted, Lukas must establish that the evidence is newly discovered and that the evidence could not have been discovered by due diligence in time to move for a new trial pursuant to M.R. Civ. P. 59(b). *See* M.R. Civ. P. 60(b)(2). Lukas fails on both fronts.

[¶ 39] First, based on the court's factual determination as to the meaning of the testimony, Lukas cannot establish that the evidence was newly discovered. To the contrary, all Lukas can suggest is that his interpretation of the testimony conflicted with the court's interpretation of the testimony. Second, even if the evidence was newly discovered, Lukas could have elicited the testimony through due diligence. Indeed, Lukas needed only to ask Bowdoin, either in an interrogatory or during her deposition, if she knew McCormick's testamentary intent in June 1989. That question was never asked.[16] The court noted that Lukas had an opportunity to ask the question on re-cross examination in October 1999 but elected not to do so. Accordingly, we conclude that the court did not abuse its discretion in denying Lukas's motion to vacate.

## VI. SEPARATE TRIALS

[¶ 40] In March 1999, the court entered an order granting successive inventory and accounting trials.[17] A trial court's decision to order separate trials is discretionary. *See Almy v. U.S. Suzuki Motor Corp.*, 600 A.2d 400, 402 (Me.1991) (citing *Maietta v. Int'l Harvester Co.*, 496 A.2d 286, 290 (Me.1985)). We have instructed trial courts that the following factors militate against separation: "1) substantial identity of the parties, and the witnesses, 2) overlapping evidence, 3) relatively simple issues, 4) relative times required for litigating different issues, and 5) the absence of discernable prejudice to the parties." *Maietta*, 496 A.2d at 290 (citing *Thornton v. Estate of Cressey*, 413 A.2d 540, 545 (Me.1980)).

[¶ 41] Lukas contends that the court abused its discretion by ordering separate trials because separation prejudiced Lukas and inconvenienced the parties and witnesses. The record establishes, however, and Lukas provides no argument to the

---

16. Lukas contends that he did ask that question in an interrogatory, to which Bowdoin provided a three page answer, and at the deposition, but that Bowdoin's responses were incomplete and evasive. However, review of that evidence does not support Lukas's contention, but merely suggests that he did not receive the precise answer he was seeking.

17. The order for separate trials presumably was issued in accordance with M.R. Civ. P. 42(b). The rule provides, in pertinent part, that a trial court, "in furtherance of convenience or to avoid prejudice may order a separate trial ... of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

contrary, that the court's *order* granting separate trials did not serve to protract the litigation, inconvenience the parties or witnesses, or prejudice Lukas. Rather, the Probate Court's admission of evidence outside the scope of the issues involved in the fees trial caused the burdensome extension of the proceedings. If the court had followed its own separation order and the evidence at the fees trial had been limited to Lukas's conduct in filing the will and offering the will for probate, then the parties and witnesses would not have endured the inconveniences they faced. Thus, the problem lies with the conduct of the trial and the broad admission of irrelevant evidence, not in the initial decision to separate distinct issues and claims. Accordingly, we cannot conclude that the Probate Court clearly abused its discretion in ordering separate trials.

The entry is:

The judgment ordering Lukas to pay Bowdoin's attorney and personal representative fees is vacated. The remaining judgments are affirmed. The matter is remanded to the Probate Court for further proceedings consistent with this opinion.