**In re ESTATE OF Newton S. STOWELL, II and Newton S. Stowell, II, Family Trust.**

Supreme Judicial Court of Maine.

Argued June 7, 1991.
Decided July 26, 1991.

Daniel W. Bates (orally), Bennett & Associates, Portland, for appellant.

Stephen P. Beale (orally), Skelton, Taintor & Abbott, Auburn, for appellees.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS, and BRODY, JJ.

GLASSMAN, Justice.

Jane Stowell Mason, Mary Stowell Waitt, and Elizabeth K. Stowell (the beneficiaries) appeal from a judgment of the Cumberland County Probate Court (*Childs, J.*) accepting a referee's report that found no breach of fiduciary duty by defendant Rand N. Stowell (Rand) as personal representative of the estate of Newton S. Stowell, II (decedent) or as trustee of decedent's family trust.[1] The beneficiaries contend that Rand breached his fiduciary duties by loaning estate funds to himself and to a family corporation and that they are entitled to damages and to attorney fees for their challenge to Rand's accounts. Rand cross-appeals, contending that the Probate Court erred in denying him a trustee's fee and supplemental attorney fees for his defense. We hold that Rand's self dealing constituted a breach of his fiduciary duties as a matter of law. We vacate that portion of the judgment accepting the conclusions of the referee and remand to the Probate Court for a determination of the beneficiaries' reasonable attorney fees in light of this holding. We affirm the remainder of the judgment which denied a trustee fee and supplemental attorney fees to Rand.

The decedent was a major shareholder and his nephew Rand was president and a

---

1. The beneficiaries originally included the estate of Barbara F. Stowell, wife of Newton S. Stowell, II, within their challenge to Rand's accounts. At oral argument they conceded that they have no claim for damages with respect to Rand's administration of the estate of Barbara F. Stowell. Rand has not sought in his cross-appeal any fee from that estate or the associated Barbara F. Stowell trust. Accordingly, we omit reference to the estate of Barbara F. Stowell in the caption of this case.

shareholder in Timberlands, Inc., now United Timber Corp. (the Company), a closely held corporation and vendor of wood products. In 1973 the decedent established the Newton S. Stowell, II Family Trust (the Trust), funded it with 618 shares of Company stock, and executed a will that would pour over all of his estate into the Trust for distribution in equal shares to his four children. The beneficiaries were to receive cash from the Trust and the decedent's son Newton S. Stowell, III (Newton, III) was to receive his share in Company stock. Rand was appointed as a trustee.[2] In 1978 Rand's brother became treasurer of the Company and instituted a practice of funding its operating debt through funds borrowed from the Stowell family members evidenced by promissory notes bearing interest rates favorable to them. The decedent died in January 1983, and Rand was appointed as a personal representative of his estate.

Between May 1983 and December 1984 Rand, acting as personal representative, made ten personal loans totalling $60,500 from the estate to himself. These loans were unsecured and were evidenced by demand notes bearing interest at twelve to fifteen percent. Only two of the loans are traceable to investments made by Rand. He invested $12,000, a portion of one loan, to produce a gain of $6,375. The remaining investment from another loan produced a loss, and Rand used the balance of the loans for personal expenses. Rand took an executor's fee of $19,000 from the estate in 1984. He completed repayment of the personal loans with interest in February 1985.

In January and June 1984 Rand also made two loans totalling $229,900 from the estate to the Company, which was experiencing cash flow problems but had not exhausted its commercial line of credit.[3] These loans were unsecured and were evidenced by demand notes bearing interest above the prime rates of commercial banks. Rand periodically rolled over the notes into new ones, producing for the estate a compound interest rate a few percent higher than it would have obtained from comparable investments. The loans were commingled with a larger cash flow in a payables account and are not traceable to product assets or to the Company's profits. In August 1984, the Company sold ten million dollars of capital assets to Boise–Cascade Corp.

There was no express authority for the personal loans or the Company loans in the decedent's will or the trust instrument. Rand did not obtain leave of the Probate Court or consent of the beneficiaries, who apparently had no notice of the personal loans to Rand. Rand kept the funds in the decedent's estate while he sought to resolve a deadlock on details of the Trust distribution between Newton, III, and the beneficiaries from 1983 to 1985, and while they litigated those details thereafter. When the beneficiaries learned of the loans to the Company, they requested that Rand place all estate funds in a money market account by January 1985. The loans remained outstanding until the Company repaid the estate with interest in April 1987, at which time Rand deposited the estate assets into the Trust.

Rand petitioned the Probate Court for instructions on the Trust distribution in February 1987.[4] In September 1988 Rand distributed the assets of the Trust under a court-approved settlement agreement between the decedent's four children. Rand

---

**2.** Newton, III, since deceased, also was appointed as co-trustee and co-personal representative but took no part in the administration of the Trust or the estate and received no fee.

**3.** Rand also made a loan of $40,000 to the Company in February 1982 from the pourover trust of Barbara F. Stowell who died in 1980. The Company repaid the principal in 1982 and paid the interest at eighteen percent to the Trust, as successor to the Barbara F. Stowell trust, in 1988. The beneficiaries do not seek

damages based upon this transaction. *See supra* note 1.

**4.** This petition was brought in the Oxford County Probate Court which had admitted the decedent's will to probate and appointed Rand as personal representative and trustee. In January 1989, following the objection of the beneficiaries to the final accounting of the Trust filed by Rand, the court disqualified itself and transferred the matter to the Cumberland County Probate Court.

did not receive a trustee fee but pursuant to a court order he retained $25,000 in an escrow account to cover taxes and litigation costs in defending his acts as personal representative and trustee. The beneficiaries seasonably objected to Rand's final accounting of the Trust. On motion of the parties both the estate and Trust matters were heard by a referee. The referee found no breach of fiduciary duty and recommended allowance of Rand's accounts as executor and trustee. The Probate Court accepted the referee's report, denied damages and attorney fees to the beneficiaries, and also denied Rand's motion for award of attorney fees expended beyond the $25,000 escrow and for a trustee fee.[5] This appeal and cross-appeal followed.

 Under the Probate Code, 18–A M.R.S.A. §§ 1–101 to 8–401 (1981 & Supp. 1990), any transaction affected by a personal representative's substantial conflict of interests is voidable by a beneficiary of the estate. *Id.* § 3–713 (1981).[6] A personal representative is a fiduciary subject to the same duty of loyalty and liability for breach as the trustee of an express trust. *Id.* § 3–703(a) ("[a] personal representative is a fiduciary who shall observe the standards of care applicable to trustees as described by section 7–302"); § 3–712 (personal representative liable for damage or loss resulting from breach of fiduciary duty to same extent as trustee of express trust). This duty imposes a stringent standard to impart full knowledge and obtain the voluntary consent of the beneficiaries before engaging in any transaction that inures to the fiduciary's own benefit. *Casco Northern Bank, N.A. v. Pearl,* 584 A.2d 643, 645 (Me.1990). We have recognized

that it is fundamental that a fiduciary derive no gain, benefit or advantage by the use of funds held in trust. *Rodick v. Pineo,* 120 Me. 160, 169, 113 A. 45 (1921). This fundamental principle bars a fiduciary from holding any interest that might affect the judgment exercised on behalf of a beneficiary, engender conflicting interests, or create divided loyalties. *Bogle v. Bogle,* 51 N.M. 474, 476, 188 P.2d 181, 183 (1947); *Restatement (Second) of Trusts,* § 170(1), comments b, h [*Restatement*]; IIA A. Scott & W. Fratcher, *The Law of Trusts* §§ 170, 170.10, 170.12, 170.25 (4th ed. 1987) [*Scott on Trusts*]; *see* 18–A M.R.S.A. § 7–301 ("Except as specifically provided, the general duty of the trustee to administer a trust expeditiously for the benefit of the beneficiaries is not altered by this Code.").

 Rand's loans of assets from the decedent's estate engendered a conflict of interests and violated his duty of undivided loyalty. Accordingly, we hold that the court erred in adopting the referee's report, which focused on whether the loans met the standard for prudent investments. The record discloses neither an authorization by the will, trust instrument, or the court, nor a voluntary consent by the beneficiaries to a conflict of interest transaction. *See* 18–A M.R.S.A. §§ 3–713, 7–404.[7] Rand's loans to himself directly created such a conflict and it is well established that a fiduciary "cannot properly use trust money in his business ... or lend trust money to himself." *Restatement* § 170(1), comment l; *see* G. Bogert, *The Law of Trusts and Trustees* § 612 at 29, 31 (2d ed. 1980). The language of section 3–713 bars the personal loans to Rand as conflict of interest transactions. Because his nine-

---

5. The court earlier granted summary judgment for Newton, III, on the beneficiaries' claims against him, based upon the beneficiaries' release of all such claims in their settlement agreement for distribution of the Trust.

6. Section 3–713 provides:
 Any sale or encumbrance to the personal representative, his spouse, agent or attorney, or any corporation or trust in which he has a substantial beneficial interest, or any transaction which is affected by a substantial conflict of interest on the part of the personal representative, is voidable by any person interested in the estate except one who has consented after fair disclosure, unless
 (1) The will or a contract entered into by the decedent expressly authorized the transaction; or
 (2) The transaction is approved by the court after notice to interested persons.

7. Section 7–404 authorizes the court upon notice and showing of good cause to relieve a trustee from any restrictions of the trustee's power imposed by the trust or the Probate Code.

teen percent share of its stock gave him a substantial beneficial interest, Rand's loans of estate monies to the Company also were barred by the language of section 3–713. Regardless of whether the estate received a fair return or Rand acted in good faith, his duty as president to minimize the Company's costs conflicted with his fiduciary duty to maximize the return to the estate on any investment of estate funds. *Wheeler v. Mann,* 763 P.2d 758, 760 (Utah 1988).

 The Probate Code provides that a personal representative is liable for damage or loss resulting from a breach of fiduciary duty. *See* 18–A M.R.S.A. §§ 3–712, 7–306(d).[8] Rand concedes that such damages may be measured at the beneficiaries' election by a fair interest on the estate's funds, by the fiduciary's profits from the breach, or by restitution of the estate's assets. With regard to Rand's personal loans the estate is entitled to a surcharge for the $6,375 profit made from Rand's one successful investment. *Restatement* § 206, comment j. This surcharge must be reduced by the interest that Rand paid on the $12,000 portion of the loan used for that investment during the seven months that the loan was outstanding. *See Ball v. Hopkins,* 268 Mass. 260, 274, 167 N.E. 338, 344 (1929). Rand is not entitled to deduct from his profits the loss from his other, unsuccessful investment of loans from the estate. *Restatement* § 213.

 With regard to the loans to the Company, Rand bore the burden of showing that no profits were earned as a result of his breach of fiduciary duties. The referee's finding that no profits of the Company were traceable from the loans is not clearly erroneous and establishes that no profit resulted to Rand himself. The referee also found that the Company had reserve borrowing capacity from commercial sources and that its 1984 sale of capital assets had favorably affected the Compa-

ny's finances. These findings, supported by competent evidence, refute the beneficiaries' alternative theories that the estate was entitled to a venture capitalist's rate of return or a constructive trust in Company assets. We conclude that Rand met his burden of showing that the loans to the Company created no damages within the scope of section 3–712.

 The scope of Rand's liability for damages or loss to the decedent's estate under section 3–712 also determines the beneficiaries' claim for attorney fees. The Probate Code provides that costs, including attorney fees, may be allowed to either party out of an estate in controversy as justice requires. 18–A M.R.S.A. § 1–601; *Freme v. Maher,* 480 A.2d 783, 788 (Me. 1984); *Estate of Brideau,* 458 A.2d 745, 747 (Me.1983). Although the allowance of such costs ordinarily lies within the discretion of a probate court, *Estate of Blouin,* 490 A.2d 1212, 1217 (Me.1985), the court here denied the beneficiaries' attorney fees based on an error of law. Because we hold that Rand breached his fiduciary duties and because the beneficiaries incurred attorney fees in seeking redress, justice requires that those attorney fees, if reasonable, be reimbursed from the estate. The fees thus constitute a damage or loss to the estate directly resulting from Rand's breach of fiduciary duties within the meaning of section 3–712. On remand the court shall determine reasonable attorney fees for which Rand shall be surcharged to reimburse the loss to the estate. 18–A M.R.S.A. § 3–721; *see Colony Cadillac & Oldsmobile v. Yerdon,* 558 A.2d 364, 368–69 (Me.1989); *Estate of Tessier,* 468 A.2d 590, 597 (Me.1983).

 In his cross-appeal Rand contests the court's denial of reimbursement for his own attorney fees in excess of the $25,000 escrow account and denial of a trustee fee for his services.[9] A fiduciary ordinarily is entitled to attorney fees incurred in litiga-

---

**8.** Section 7–306(d) provides:

The question of liability as between the trust estate and the trustee individually may be determined in a proceeding for accounting, surcharge or indemnification or other appropriate proceeding.

**9.** The beneficiaries have not sought to surcharge Rand for expending the escrow account on the costs of defending this litigation.

tion, conducted in good faith on behalf of an estate, regardless of the outcome. 18–A M.R.S.A. §§ 3–720, 7–402(c)(24) & (25). But proceedings that are not conducted to benefit the estate do not entitle a·fiduciary to attorney fees, *Appeal of Champlin,* 133 Me. 287, 292, 177 A. 191 (1935), and the same is true of litigation that results from the fiduciary's misconduct. *See Bogle v. Bogle,* 51 N.M. at 476, 188 P.2d at 183; III *Scott on Trusts* §§ 188.4 at 67, 188.6 at 70; IIIA *id.* § 245 at 337. Because the costs incurred in defending his accounts resulted, at least in part, from Rand's breaches of fiduciary duty, we affirm the court's denial of Rand's request for supplemental attorney fees.

 A probate court has broad discretion in determining the reasonableness of a trustee fee. *See* 18–A M.R.S.A. §§ 3–721, 7–205. We will not disturb such a determination except for clear error. *Estate of Rosen,* 520 A.2d 700, 702 (Me.1987). Here, the court received evidence from which it could have concluded that the $19,000 fee that Rand took as a personal representative adequately compensated him for his services as trustee, that the short period of administration during which the Trust contained estate assets did not merit a fee, or that Rand's accounting was insufficient to evaluate the worth of his services. *See Estate of Blouin,* 490 A.2d at 1217. Our holding that Rand breached his fiduciary duties with respect to a large fraction of the assets that poured over to the Trust further undermines his claim that he is entitled to an additional fee. *See Restatement* § 243; IIIA *Scott on Trusts* § 243 at 316–17. We conclude that the court did not abuse its discretion in denying Rand a trustee fee.

The entry is:

Judgment of the Probate Court vacated except with respect to the denial of a trustee fee and supplemental attorney fees to Rand Stowell.

Case remanded for the entry of judgment for Jane Stowell Mason, Mary Stowell Waitt and Elizabeth K. Stowell and for the imposition of a surcharge that includes their reasonable attorney fees in accordance with the opinion herein.

All concurring.