MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 108
Docket:      Yor-19-327
Argued:      July 15, 2020
Decided:     August 13, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON and CONNORS, JJ.

## ESTATE OF CLAUDETTE SHELTRA

CONNORS, J.

[¶1]  Janet Sheltra appeals from a summary judgment determining that her petition for formal probate was time barred and from a subsequent order of complete settlement, both entered by the York County Probate Court (*Chabot, J.*).  For the reasons discussed below, we dismiss the appeal from the summary judgment as untimely, and, subject to modification, we affirm the order of complete settlement.

## I.  BACKGROUND

[¶2]  In 2006, Claudette Sheltra executed a will that expressly revoked any prior wills.  She died on January 7, 2015, survived by her son, Paul Sheltra, and her daughter, Janet Sheltra.  Shortly thereafter, Paul filed an application for informal probate of the 2006 will and was appointed personal representative of Claudette's estate in February 2015.

2

[¶3]  On January 25, 2018, Janet filed two pro se petitions: one for formal probate of a will executed by Claudette in 2004 and appointment of herself as personal representative and another seeking the removal of Paul as personal representative.  Paul opposed Janet's petitions and moved for summary judgment as to her petition for formal probate on the basis that it was barred by the statute of limitations.  *See* 18-A M.R.S. § 3-108 (2018).[1]  Paul also filed a petition for final settlement of the Estate.  Janet retained counsel and moved for more time to respond to Paul's motion for summary judgment; the court granted her an extension.  Before filing any response, however, Janet's counsel filed a motion to withdraw, which the court granted.

[¶4]  Once again acting pro se, Janet filed a response to Paul's motion for summary judgment in which she set forth the circumstances that she believed excused the untimeliness of her petition, along with several supporting documents. Janet alleged that her petitions had been untimely because she was scared of Paul and that she had suffered from other unfortunate events that had interfered with her ability to get to court.  Her response did not comply with

---

[1]  The citations herein are to the prior Probate Code that was in effect during the proceedings at issue in this appeal.  The Probate Code codified in Title 18-A has since been repealed and replaced with a new Probate Code now codified in Title 18-C.  *See* P.L. 2017, ch. 402 (repealing Title 18-A and replacing it with Title 18-C); P.L. 2019, ch. 417, §§ A-103, B-14 (amending the effective date of the repeal and replacement from July 1, 2019, to September 1, 2019).

M.R. Civ. P. 56(h). For example, she failed to admit, deny, or qualify the facts in Paul's statement of material facts; she did not list her additional facts in separately-numbered paragraphs; and she offered no record citations in support of her factual assertions.

[¶5] In a May 15, 2018, judgment, the court opted to "analyze [Janet's] submission as if it were compliant," but it nevertheless determined that her allegations were not sufficient to toll the three-year statute of limitations and that her petition was time barred. *See* 18-A M.R.S. § 3-108. The court therefore granted Paul's motion for summary judgment as to Janet's petition for formal probate but noted that she could continue with her petition to remove Paul as personal representative.

[¶6] The following month, the court held a pretrial conference on Paul's and Janet's remaining petitions and ordered the parties to attend pretrial mediation. Thereafter, Paul filed three motions: (1) a motion in limine seeking to exclude certain evidence at the trial on Janet's motion to remove him as personal representative, (2) a motion to compel Janet to attend mediation, and (3) a motion for allowance of costs and attorney fees. After much delay— during which time Janet obtained new counsel and the parties participated in

4

unsuccessful mediation—the court held a trial on Paul's and Janet's petitions on February 22, 2019.

[¶7]  Before the trial began, the court granted Paul's motion in limine and ordered that Janet was prohibited from offering evidence on issues other than the bases for removal of a personal representative, *see* 18-A M.R.S. § 3-611(b) (2018) (outlining what constitutes cause for removal of a personal representative), and Paul's conduct prior to his appointment as personal representative "unless it resulted in unfair treatment or mismanagement of the [E]state."  In response to that ruling, Janet made an oral motion to withdraw her petition for Paul's removal as personal representative, and the court entered an order dismissing that petition.

[¶8]  A short trial on Paul's petition for complete settlement then ensued. Afterward, the court entered an order that, among other things, directed Paul to provide an accounting and attorney fee affidavit to Janet and for Janet to identify specific objections thereto.  Paul did so, Janet lodged her objections, and Paul filed two more supplementary inventories in response.  The process culminated in a telephone conference on June 28, 2019, at which time "both parties indicated that additional court time was not necessary and the matter was ready for decision."

[¶9] On July 1, 2019, the court entered a judgment ordering Paul to transfer certain property to Janet in accordance with Claudette's 2006 will and a personal property addendum. The court also awarded $22,995.97 in attorney fees to Paul to be paid for only out of Janet's share of the Estate, an amount that represented the legal fees he incurred as personal representative after Janet filed her petitions in January 2018.

[¶10] Janet appealed. *See* 18-A M.R.S. § 1-308 (2018); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

A. Timeliness of Appeal from Summary Judgment

[¶11] The first issue that must be addressed is whether Janet's appeal from the summary judgment dismissing her petition for formal probate was timely.[2]

[¶12] Paul argues that the twenty-one-day appeal period began to run from the entry of the summary judgment rejecting Janet's petition on May 15, 2018, because that judgment was "final" and "fully resolved all issues presented in the formal probate proceeding" commenced by Janet's petition.

---

[2] We invited amicus briefs on the issue of the timeliness of Janet's appeal from the summary judgment but received none.

6

Janet counters that the summary judgment was not final because it did not dispose of her remaining petition to remove Paul as personal representative and that her notice of appeal was timely because it was filed within twenty-one days of the entry of the court's order on Paul's petition for complete settlement of the Estate on July 1, 2019.

[¶13] To "avoid piecemeal litigation and to preserve our limited judicial resources," we have long adhered to the general rule that "only final judgments are ripe for appellate review." *In re Adoption of Matthew R.*, 2000 ME 86, ¶ 4, 750 A.2d 1262 (quotation marks omitted). A judgment is final when it "fully decides and disposes of the entire matter pending before the court" and leaves "no questions for the future consideration and judgment of the court." *Safety Ins. Group v. Dawson*, 2015 ME 64, ¶ 6, 116 A.3d 948 (quotation marks omitted).

[¶14] The application of the final judgment rule to the unsupervised administration of estates, however, is complicated by the fact that each estate may involve multiple proceedings. Title 18-A M.R.S. § 3-107 (2018)[3] states, "Unless supervised administration . . . is involved, . . . each proceeding before the judge or register is independent of any other proceeding involving the same

---

[3]  We note that the new Probate Code contains a substantively identical section 3-107. *See* 18-C M.R.S. § 3-107 (2020).

estate."[4]   The comment to the Uniform Probate Code section from which section 3-107 is derived explains that the scope of a proceeding is "framed by the petition" unless "otherwise prescribed by the Code."[5]   Unif. Probate Code § 3-107 cmt., *included with* 18-A M.R.S.A. § 3-107 (2012).

[¶15]   Maine Rule of Probate Procedure 79 further confirms the independent proceeding framework established by section 3-107 by directing registers of probate to assign every estate "a master docket number when the first proceeding concerning it is commenced in the court" and then to assign each proceeding involving the same estate "a subsidiary docket number consisting of the master docket number and a numerical suffix identifying that proceeding."   In this case, for example, the master docket number for the Estate was 2015-0128, and there were three subsidiary docket numbers: 2015-0128(1) Janet's petition for removal, 2015-0128(2) Janet's petition for formal probate, and 2015-0128(3) Paul's petition for complete settlement.

---

[4]   In contrast to unsupervised administration, "[s]upervised administration is *a single in rem proceeding* to secure complete administration and settlement of a decedent's estate under the continuing authority of the court which extends until entry of an order approving distribution of the estate and discharging the personal representative or other order terminating the proceeding." 18-A M.R.S. § 3-501 (2018) (emphasis added).

[5]   Section 3-107 does allow parties to "combine various requests for relief" in a single petition and proceeding, if doing so would not result in delay.   18-A M.R.S. § 3-107 (2018).

8

[¶16]  We have never specifically addressed how section 3-107 and subsidiary docket numbers affect the time for appeal in probate matters.  *See* Hunt, *Maine Probate Law* § 3.107 at 113 (1999) ("To date, the Supreme Judicial Court has not addressed Section 3-107, but there are some interesting issues raised by the independent proceedings concept.  One of the more interesting questions involves when a particular proceeding is ripe for appeal.").[6]  A leading treatise on Maine probate procedure, however, warns that a "subsidiary docket is a separate proceeding" that "can and often does go to final judgment long before estate administration is finished."  Mitchell & Hunt, *Maine Probate Procedure* § 9.1.7 at 9-8 (2017).

[¶17] Because section 3-107 is based on a uniform law, other state courts have addressed its effect on finality and ripeness.  The consensus among the courts that have examined this issue is that each probate petition "should ordinarily be considered as initiating an independent proceeding, so that an order disposing of the matters raised in the petition should be considered a final, appealable order" even if there are other pending proceedings involving

---

[6]  We have cited section 3-107 only once.  In *Button v. Peoples Heritage Sav. Bank*, 666 A.2d 120, 122-23 & n.8 (Me. 1995), we rejected an appellant's argument that a probate court order was not final for the purposes of collateral estoppel and cited section 3-107 for the proposition that "each probate proceeding is independent of any other proceeding."

the same estate or if the estate has yet to be fully administered. *In re Estate of Newalla*, 837 P.2d 1373, 1377 (N.M. Ct. App. 1992) [hereinafter *Newalla*]; *see In re Estate of Geier*, 809 N.W.2d 355, 357-60 (S.D. 2012) (citing *Newalla* with approval); *Waldow v. LaPorta*, 246 P.3d 628, 630-31 (Ariz. 2010) (same); *Scott v. Scott*, 136 P.3d 892, 896-97, 899 (Colo. 2006) (same); *Schmidt v. Schmidt*, 540 N.W.2d 605, 607 (N.D. 1995) (holding similarly).[7]

[¶18]   We agree with this consensus view, which dovetails with the subsidiary docket framework for separate proceedings established by M.R. Prob. P. 79(a).   Accordingly, we now clarify that when a final judgment is entered in a subsidiary docket, the time to appeal that judgment pursuant to M.R. App. P. 2B(c) begins to run even if there are other pending proceedings involving the same estate or the estate has yet to be fully administered. *See* Mitchell & Hunt, *Maine Probate Procedure* § 9.1.7 at 9-8.

[¶19]   In this case, Janet's petition for formal probate initiated an independent proceeding and was assigned its own subsidiary docket number

---

[7] That is not to say, however, that a party may "carve out an issue from an ongoing proceeding by simply filing a 'petition' seeking relief with respect to that issue." *In re Estate of Newalla*, 837 P.2d 1373, 1377 (N.M. Ct. App. 1992).   For example, if a party files a "petition" relating to discovery matters in an existing proceeding, that petition does not initiate a separate proceeding and the court's order regarding discovery is not a final, appealable order. *Id.* ("[O]nce a petition is filed, it defines a proceeding.   Further pleadings relating to the same subject matter, whether labelled motions or petitions, are part of the same proceeding."); *see also Scott v. Scott*, 136 P.3d 892, 897 (Colo. 2006) (same).

in accordance with section 3-107 and M.R. Prob. P. 79(a). The court's summary judgment disposed of all the issues raised in the petition by determining that it was time barred, and therefore the judgment was final as to that proceeding. *See Newalla*, 837 P.2d at 1377; *see also Safety Ins. Group*, 2015 ME 64, ¶ 6, 116 A.3d 948.

[¶20]  The other pending proceedings involving Janet's petition for removal and Paul's petition for complete settlement were independent of the proceeding on Janet's petition for formal probate—their subject matters were distinct and they were each assigned to separate subsidiary dockets—and thus they did not defeat the finality of the court's summary judgment. *See Schmidt*, 540 N.W.2d at 607-08 (holding that an order disposing of one probate petition was appealable despite the existence of another pending petition because the disposition of the pending petition would not affect the finality of the order); *Jarmin v. Shriners Hosps. for Crippled Children*, 450 N.W.2d 750, 751 & n.3 (N.D. 1990) (holding that an order removing a personal representative was final and appealable despite the pendency of that personal representative's petition regarding the final accounting of the estate)*; cf. Scott*, 136 P.3d at 898 (relying, in part, on the fact that the probate court used the same case number

for multiple pleadings to hold that the pleadings did not initiate independent proceedings within the meaning of section 3-107).

[¶21]  Consequently, we conclude that the court's summary judgment was ripe for appeal when it was entered on May 15, 2018, and that Janet's notice of appeal, filed more than one year later on July 19, 2019, was untimely as to that judgment.  *See* 18-A M.R.S. § 1-308; M.R. App. P. 2B(c)(1).  Because the "time requirements for taking an appeal are jurisdictional," *Thomas v. BFC Marine/Bath Fuel Co.*, 2004 ME 27, ¶ 5, 843 A.2d 3, we must dismiss Janet's appeal from the summary judgment.  *See* Alexander, *Maine Appellate Practice* § 2B.1(b) at 62 (5th ed. 2018) ("Strict compliance with the time limits is a prerequisite to consideration of an appeal.").

B.     Attorney Fees

[¶22]  Unlike her appeal from the court's summary judgment, Janet's appeal from the court's order of complete settlement was timely. *See* M.R. App. P. 2B(c)(1).  Her only challenge relating to that order pertains to the court's award, pursuant to 18-A M.R.S. § 1-601 (2018), of $22,995.97 in attorney fees to Paul to compensate him for the legal fees he incurred after Janet filed her petitions in January 2018.  Janet does not challenge the amount of the award; rather, she contends that the court failed to consider her argument that

12

all of her actions were taken in good faith and that the court abused its discretion in awarding the fees solely out of her share of the Estate.

[¶23]   In a departure from the American Rule that parties to litigation generally must pay their own attorney fees, *see Linscott v. Foy*, 1998 ME 206, ¶ 16, 716 A.2d 1017, section 1-601 authorizes courts to award attorney fees in contested cases "to be paid to either or both parties, out of the estate in controversy, as justice requires."[8]  "We review whether a court has exceeded its authorization in awarding attorney fees pursuant to section 1-601 for an error of law."  *Estate of Ricci*, 2003 ME 84, ¶ 28, 827 A.2d 817.  "When a court does not exceed its authorization under section 1-601 to award fees, the decision to award fees, as well as the amount awarded, is reviewed for an abuse of discretion."   *Id.*  "The primary concern of a court in determining whether section 1-601 warrants an award of attorney fees is whether the litigation has been beneficial to the estate . . . ."  *Id.* ¶ 32 (quotation marks omitted).

[¶24]   Contrary to Janet's "good faith" argument, because Paul was the one who requested attorney fees, Janet's good or bad faith is of little

---

[8]  Unlike section 3-107, section 1-601 is not derived from the Uniform Probate Code.  *See* Maine General Comment—Original 1979 Act, *included with* 18-A M.R.S.A. § 1-601 (2012) ("This Part was added to the Uniform Probate Code version in order to retain and integrate existing provisions of Maine law providing for costs and fees in probate matters."); *Estate of Brideau*, 458 A.2d 745, 746-48 (Me. 1983) (discussing the legislative history of section 1-601).

consequence; the issue is really whether Paul incurred the attorney fees for the benefit of the Estate. *See id.* Although the court did not make any explicit findings on this issue, we infer, in the absence of a motion for further findings, that the court so found. *See Guardianship of Ard*, 2017 ME 12, ¶ 15, 154 A.3d 609 ("In the absence of a motion for findings of fact, *see* M.R. Civ. P. 52(a), we assume that the court found all of the facts needed to support its decision if those facts are supported by competent evidence." (footnote omitted) (quotation marks omitted)). The record, which shows that Paul defended against Janet's petitions so that he could distribute Claudette's estate according to her 2006 will, supports such a finding. *See Estate of Ricci*, 2003 ME 84, ¶ 34, 827 A.2d 817 (holding that a court's award of attorney fees is entitled to significant deference because the court is in the best position to assess the relevant factors that a court must consider when awarding fees, including the parties' conduct contributing to the amount of the fees).

[¶25] The court, however, should not have directed that the award be paid solely out of Janet's share of the Estate. We have previously held that section 1-601 does not grant courts the authority to surcharge opposing litigants. *See Estate of McCormick,* 2001 ME 24, ¶¶ 18-25, 765 A.2d 552. In *Estate of McCormick*, we vacated an award of attorney fees to a personal

representative in a contested case because the court ordered the opposing litigant to pay the fees personally rather than awarding the fees from the estate. *Id.* ¶¶ 10, 19, 25. We explained that "although [the personal representative] may seek recovery of [his or] her fees from the estate, the statute does not authorize the surcharge of fees against opposing litigants." *Id.* ¶ 19. Although the award in this case was not directly against Janet, the court still directed that the award of attorney fees come out of her share of the Estate, effectively surcharging the fees against her in contravention of our holding in *Estate of McCormick*. *See also Estate of Rosen*, 520 A.2d 700, 701 (Me. 1987) (examining another probate statute authorizing an award of attorney fees "from the estate," and interpreting the phrase to mean that "the fees should be awarded out of the estate to be borne pro rata by all the beneficiaries" (quotation marks omitted)).[9]

---

[9] We have noted two circumstances where a court has the authority to surcharge a party in a contested probate proceeding. *See Estate of McCormick*, 2001 ME 24, ¶ 25 n.10, 765 A.2d 552 (indicating that a court may award costs to a prevailing party pursuant to M.R. Prob. P. 54(d) if the court finds that the opponent's claim was frivolous or malicious); *Estate of Whitlock*, 615 A.2d 1173, 1178-79 (Me. 1992) (affirming a surcharge for attorney fees and costs against a personal representative where the court determined that he breached his fiduciary duty and failed to represent the estate in good faith); *see also* Mitchell & Hunt, *Maine Probate Procedure* § 13.02 at 13-13 to 13-19 (2017) (discussing attorney fees in probate matters). Paul did not assert that Janet owed the Estate a fiduciary duty, and, although he cited M.R. Prob. P. 54(d) generally in the introduction to his motion for attorney fees, his arguments were—and continue to be on appeal—based on section 1-601. *See* M.R. Prob. P. 54(d)(1) ("In all contested formal probate proceedings, costs may be allowed to either party out of the estate in controversy as provided by statute and these rules, *or* in the discretion of the court may be allowed against a losing party in the event of a frivolous or malicious claim or objection." (emphasis added)). Moreover, Paul did not ask the court to find that

[¶26]  Because we discern no other error or abuse of discretion in the court's fee award, we modify the order of complete settlement to award attorney fees out of the Estate in general, to be borne pro rata by Janet and Paul as the only two beneficiaries.

The entry is:

> Appeal from summary judgment dismissed. Order of complete settlement modified to award attorney fees out of the Estate in general and, as modified, affirmed.

Vanessa A. Bartlett, Esq. (orally), Portland, for appellant Janet Sheltra

F. Jay Meyer, Esq. (orally), Troubh Heisler LLC, Portland, for appellee Paul Sheltra

York County Probate Court docket number 2015-0128
FOR CLERK REFERENCE ONLY

---

Janet's claims were frivolous or malicious, and the court explicitly made its award pursuant to its statutory authority in section 1-601.  *Cf. Estate of McCormick*, 2001 ME 24, ¶ 25 n.10, 765 A.2d 552 ("[B]ecause the Probate Court did not find that [the losing party's] claim was frivolous or malicious, [the personal representative] may not recover pursuant to rule 54(d) in the circumstances of this case.").  Accordingly, we cannot affirm the court's award of fees on either of these bases.