STATE OF MAINE                          BUSINESS AND CONSUMER COURT
CUMBERLAND, ss                          BCD-CIV-2021-020


ANN NORTON and MARK NORTON,

       Plaintiffs,

    v.

JOHN NORTON, JR. and JOHN NORTON, JR.,
Personal Representative of the Estate of John
Norton, Sr.,

       Defendants

_____                 **COMBINED ORDER ON REQUEST AND**
                                        **MOTIONS RE: COUNSEL FEES**
                                        **AND EXPERT FEES**


JOHN NORTON, JR and NANCY C. NORTON,

    Plaintiffs,

    v.

ANN NORTON,

    Defendant


Before the Court are two Motions for Interim Award of Attorneys Fees, Costs and Expenses

brought by Plaintiffs Ann Norton (Ann) and Mark Norton (Mark). In addition, John Norton, Jr. (John Jr.)

Personal Representative of the Estate of John Norton, Sr. filed a Request for Confirmation of Attorneys

Fees and Expert Witness Costs of the Estate. On June 24, 2022 the Court issued Findings and Order for

Entry of Judgment and on September 29, 2022 granted in part a Motion to Clarify brought by Ann

Norton. In its Order of June 24, 2022, the Court set a deadline for the parties to file motions for fees and

costs but the filings before the Court were not complete until October 11, 2022. In addition, the Court

conducted a teleconference with counsel on January 4, 2023 to discuss and ensure that this matter can

move to final judgment soon after the issuance of this Combined Order and as consistent with the

Stipulated Scheduling Order dated August 4, 2022.

Ann Norton is currently represented by Attorney John Lambert. Mark Norton is represented by Attorney Tudor Goldsmith. John Norton, Jr. as Personal Representative for the Estate of John Norton, Sr. is represented by Attorney Tim Norton, and Attorney Richard Olson represents John Norton, Jr. and Nancy Norton individually.[1]

The Court has reviewed the filings of the parties including the Affidavits and Exhibits, and issues the following order on the Motions.[2]

## STANDARD OF REVIEW

The parties point to a number of sources of authority for the Court to consider in ruling on these motions. John Jr.'s Request for Confirmation of Attorneys Fees and Expert Witness Costs of the Estate relies upon 18-C M.R.S. Section 3-720 for his request that the Court find he defended this estate litigation in good faith, and order that all his counsel fees and costs be paid from the Estate. 18-C M.R.S. Sections 1-601 and 3-712 are the focus of Ann and Mark's arguments.

In *Estate of Sheltra*, 2020 ME 108, the Law Court recently noted that Section 1-601 constitutes "a departure from the American Rule that parties to litigation generally must pay their own attorney fees." ¶ 23, 238 A.3d 234 (citing *Linscott v. Foy,* 1998 ME 206, ¶ 16, 716 A.2d 1017) (discussing 18-A M.R.S. § 1-601, relocated and amended at 18-C M.R.S. § 1-601). The statute authorizes courts to award counsel fees in contested cases "to be paid to either or both parties out of the estate in controversy, as justice requires." The Law Court further noted that this section does not authorize courts to surcharge opposing litigants. *Estate of Sheltra*, 2020 ME 108, ¶ 25, 238 A.3d 234 (citing *Estate of McCormick,* 2001 ME 24, ¶¶ 18-25, 765 A.2d 552). It also stated that "the primary concern of a court in determining whether 1-601

---

[1] Nancy Norton ("Nancy") is a party only as Plaintiff in a civil case filed by her and her husband John Jr. against Ann. It was consolidated with the Probate matter which had been removed to the Business and Consumer Docket.
[2] The Court will treat the Request for Confirmation of Fees and Expert Witness Costs of the Estate as if it were captioned as a motion.

warrants an award of attorney fees is whether the litigation has been beneficial to the estate….." *Id.* ¶ 23 (quoting *Estate v. Ricci*, 2003 ME 84, ¶ 32, 827 A.2d 817).

As noted, Ann and Mark brought their motions on Sections 1-601 and 3-712, but they primarily rely upon Section 3-712 is support of their request that John Jr. be ordered to pay for their fees and costs from his personal, and not Estate funds. John Jr. individually and on behalf of the Estate, argues that the requirements of Section 3-712 have not been met based upon the Court's post-trial findings. In addition, he argues that the Estate did not benefit from the litigation, and that any arguments made by Ann and Mark regarding fees must be confined to what amount, if any, of their counsel fees and costs should be paid from the Estate.

The motions also require the Court to decide if any fees or costs can or should be awarded to Ann Norton if incurred before the date (October 14, 2019) that the Settlement Agreement, to which she was a party, was filed in the Cumberland County Probate Court. That Agreement became a Decree of the Probate Court dated October 17, 2019. Paragraph 6 of that Decree provides as follows: "The Estate is responsible for the attorney fees of John Norton incurred in this litigation. The Estate shall reimburse Ann Norton for Ann Norton's attorney fees from the proceeds of the sale of the property up to $10,000."[3] The Court will address this issue first.

*Pre-10/14/19 Fees Incurred by Ann Norton*

In her Motion for Interim Award of Attorneys Fees, Costs and Expenses Ann Norton asks the Court to award her fees and costs incurred from "all legal proceedings associated with the Estate of John Norton, Sr. through July 31, 2022. The 181-page itemized bill filed with the Court contains charges beginning October 25, 2018. Her argument, however, does not assert any legal reason that the Settlement

---

[3] Counsel for Mark Norton is seeking an Interim payment of his fees and costs incurred in this litigation from June 2020 to the present. The Court requested and received an itemized bill from Atty. Goldsmith on January 4, 2023.

Agreement might not be valid or binding upon her. The Court will therefore not award any fees and costs for Ann Norton that were incurred prior to the date of the Settlement Agreement.[4]

*John Jr.'s Request Pursuant to Section 3-720*

John Jr. is correct that the Probate Code provides that a personal representative who defends estate litigation "in good faith, whether successful or not, is entitled to receive from the estate necessary expenses and disbursements, including reasonable attorney's fees incurred." 18-C M.R.S. § 3-720. The reasonableness of fees for any person hired by the personal representative, including his or her own counsel, is determined by a number of factors set out in Section 3-721, including: "the time and labor required; the novelty and difficulty of the questions involved and the skill requisite to perform the service properly; the likelihood, if apparent to the personal representative, that the acceptance of the particular employment will preclude the person employed from other employment; the fee customarily charged in the locality for similar services; the amount involved and the results obtained; the time limitations imposed by the personal representative or by the circumstances; and the experience, reputation and ability of the person performing the services." § 3-721(2)(A-F.)

The Court also agrees with John Jr. that this statute is different in kind from a "fee-shifting" or "award" of fees otherwise permissible under Maine law.[5]  However, given the nature of the findings made by the Court after trial regarding John Jr.'s failure to expeditiously settle the Estate, as well as the long-standing nature of his conflicted positions, the Court's job is not as simple as determining the reasonableness of the fees sought by John Jr.'s estate counsel and the reasonableness of the costs incurred.

The Law Court held in *In re Estate of Stowell,* that "proceedings that are not conducted to benefit the estate do not entitle a fiduciary to attorney's fees, and the same is true of litigation that results from

[4] Although not addressed by the parties, this same analysis would apply to the Court's ability to set aside the agreement of the parties (also from paragraph 6 of the Decree) that fees incurred by John Jr. prior to that same date would be paid for by the Estate.

[5] The Court would note, however, that Subsections A-F mirror in many respects the so-called "Johnson factors" set out in *Sweet v. Breivogel,* 2019 ME 18, ¶ 25 n.4, 201 A.3d 1215 and again most recently in *Fortney & Weygandt, Inc. v. Lewiston DMEP IX, LLC,* 2022 ME 5, ¶ 11 n.9, 267 A.3d 1094.

the fiduciary's misconduct." 595 A.2d 1022, 1027 (Me. 1991) (internal citations omitted) (citing *Appeal of Champlin,* 133 Me. 287, 292, 177 A. 191 (1935); *Bogle v. Bogle,* 51 N.M. 474, 188 P.2d 181, 183 (1947)). The Law Court in *Stowell* affirmed the Probate Court's denial of supplemental fees "[b]ecause the costs incurred in defending his accounts resulted, *at least in part,* from [the personal representative's] breaches of fiduciary duty…" *Id.* (emphasis added). Therefore, before it can decide John Jr.'s request to confirm attorneys fees and expert witness costs, the Court must determine whether the nature of John Jr.'s breaches of duty found after trial justifies application of a "surcharge" against him. In addition, the Court believes that it should conduct an analysis of Section 3-712 before deciding whether Ann and Mark can also obtain an order that part or all of their fees be awarded under Section 1-601.

 *Section 3-712*

18-C M.R.S. § 3-712 provides in pertinent part: "If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of the personal representative's fiduciary duty to the same extent as a trustee of an express trust…."

The parties interpret this statute differently as applied to the facts of the case. John Jr. claims that this "surcharge" is not appropriate "when fees sought are the result of merely formalistic breaches of duty or that are the result of good faith actions taken by the personal representative," citing *Estate of Tessier,* 468 A.2d 590, 596 (Me. 1983). He further claims that the Court did not make findings of bad faith or inexcusable conduct by him. *See Estate of Voignier*, 609 A.2d 704, 708 (Me. 1992). Ann points to two cases in particular, *Estate of Whitlock,* 615 A.2d 1173 (Me. 1992) and *Estate of Stowell,* 595 A.2d 1022 (Me. 1991). In *Stowell,* the Law Court ordered fees and costs to be surcharged against a personal representative ("PR") individually. The PR had made ten personal loans to himself, including for payment of personal expenses, and borrowed over $200,000 for payments to a company without notice or authority to do so. The loans were eventually paid back by the PR. The Law Court concluded however that these

5

transactions constituted "substantial conflicts of interest" and overturned a Probate Court Order which accepted a Referee's Report finding to the contrary. 595 A.2d at 1025.

While this Court did not, as John Jr. states, use the term "bad faith" in describing his conduct in its trial findings, he understates what the Court did find. Ann, for her part, continues to make arguments previously rejected by the Court as not proven, particularly that John Jr. never had any intent to sell the property, and allegations that over the course of almost two decades John Jr. consistently manipulated events and circumstances to take advantage of his siblings. The Court concluded that the family dynamics and John's motives could not be that easily simplified.

What the Court found was this. Events that occurred before John Sr. died did not make John Jr.'s task as PR simple or easy in the first few years. The property in question at the time of his father's death was in terrible shape, and the legally required costs for demolition and clean up were considerable. John Jr. and his wife Nancy financed the demolition and cleanup before John Sr. died but the work was not completed until after his death. These facts are not in dispute. It is also not in dispute that John Jr. and his siblings were not consistently at war with one another during the lengthy period it took to sell the only asset in the Estate. They spent time together and celebrated holidays together. They took care of ailing family members, and even each other from time to time. The Court in its June 2022 findings therefore declined to villainize John Jr. as Ann has tended to do throughout these proceedings.

At the same time, John Jr. continues to minimize the effects of his failure to expeditiously and efficiently settle and distribute this estate in the best interest of all the beneficiaries as required by Maine law. As noted, his early efforts to preserve the property prevented it from losing value or being burdened by liens. However, what the Court cannot and did not excuse was John Jr.'s failure to list this property for sale for many years - from the middle of 2006 until 2021 when the Probate Court finally had to order that to happen through the appointment of a Special Administrator who finally arranged for its sale. This failure has had serious repercussions for the beneficiaries of this Estate. Alice, for one, did not live long enough to personally benefit from her share of the Estate, and the others have waited far too long.  And

6

the Court agrees with this statement made by counsel for Mark Norton: "While it is not unusual for some matters of estate administration to linger…usually a 'long time' in this context is four or five years, and it is within the broader context of an estate where most of the estate has been distributed." And as she said, she and her client have understood for a very long time "that what was happening was not normal."

The Court also found that John Jr. had mixed motives with regard to certain decisions he made in administering the estate. These mixed motives became conflicts of interest which persisted for years. John Jr. was effectively the lessee as well as the lessor for the Estate property, and the payor of the note as well as the payee. While these arrangements predated his appointment as PR, nothing changed after he undertook his fiduciary responsibilities, including recognizing the conflicts, disclosing them and remedying them. He failed to provide complete disclosure of his investment plan to his siblings, and he failed, once the loan he and Nancy made to John Sr. matured, to either refinance the property in an arms-length transaction or sell the property and distribute its value to the beneficiaries. And the Court found no legal or equitable justification for John Jr. to continue to assess nine percent interest on the loan – without disclosure and consent by the beneficiaries, up to the date of trial, and not until the Court ordered otherwise.[6]

According to Plaintiff's expert, James McLeod, it is sometimes reasonable for a PR to "hold" an asset over time for development, but only after a solid plan is developed, after full disclosure to the beneficiaries, and ideally with their consent. As the Court found after trial, that clearly did not happen here. Instead, the property remained unsold, and the beneficiaries had to wait for their share for almost two decades for the sale of the Estate's only asset. Finally, John Jr. and his business unquestionably

---

[6] The Court does not see these failures to be at all akin to the "formalistic" failure found in the case cited by John, Jr., *Estate of Tessier,* 468 A.2d 590 (Me. 1983). In that case, the Personal Representative was faulted for, among other things, failing to file an Inventory of the contents of a Florida trailer owned by the decedent. The trailer along with its contents were assessed to have a total value of approximately $4,500. That was the conduct forgiven as "formalistic" by the Law Court.

benefitted from being able to maintain his lobster operations on or near the subject real estate for such a long time, even if the amount of that benefit is difficult to precisely quantify.

For the above reasons, and because these conditions existed over such an extended period of time, the Court concludes that these conflicts of interest were substantial. As Mr. McLeod put it, John Jr.'s conflicts were "multiple," and they were of a longstanding nature.

The facts of *Estate of Stowell* are not identical to the facts here, in that a lengthy delay in settling the estate was not at issue there. 595 A.2d 1022. However, the Law Court found the conflicts of interest to be substantial given the lack of notice to beneficiaries (or consent of the Probate Court) to the loans, which the Law Court labelled "self dealing" and "conflicts of interest." *Id.* at 1023, 1025. The Law Court also noted the lack of clear authority for the PR in that case to make certain of the decisions at issue. *Id.* at 1024. Those factors exist in this case, including but not limited to John Jr.'s unilateral and undisclosed decision to continue paying himself nine percent interest on the loan for an extended period of time. The Court has therefore concluded that a surcharge in the form of some amount of reasonable counsel fees and costs is justified in this case.

Ann and Mark ask the Court to have John Jr. pay all of their legal fees and costs. However, the Court does not view the purpose of a surcharge in a case like this to be tantamount to an award of punitive damages. The test is still one of reasonableness, and a surcharge is not, as Mark and Ann would have it, an all-or-nothing proposition.

In *Stowell,* the Law Court found that the PR breached his fiduciary duties, and that beneficiaries had incurred attorney fees in seeking redress. It concluded that "justice requires that those attorneys fees, *if reasonable,* be reimbursed from the estate. The fees thus constitute a damage or loss to the estate directly resulting from [the PR's] breach of fiduciary duties under section 3-712." *Id.* at 1026 (emphasis added). The Law Court in *Stowell* remanded the case, and ordered the Probate Court, pursuant to § 3-712, to determine "reasonable attorneys for which [the PR] shall be surcharged to reimburse for the loss to the

8

estate." *Id.* at 1027. Upon remand, however, the Probate Court ordered payment of fees incurred – but only fees incurred after the *Stowell I* mandate. In the second appeal, *In re Estate of Stowell ("Stowell II")*, the Law Court clarified that the beneficiaries were "entitled to recover out of the estate the reasonable attorney fees incurred by them *in establishing that [the PR] breached his fiduciary duty by making the personal and business loans.*" 636 A.2d 440, 442 (Me. 1994) (emphasis added).[7]

The Court must therefore consider if the attorneys fees and costs requested are reasonable based not only on the itemized bills but believes it should also frame the issue as the Law Court did in *Stowell,* whether the reasonable fees were incurred by them in establishing that the PR breached duties. 595 A.2d at 1027. As a result of this litigation, the Estate recovered the interest John Jr. had assessed and was continuing to assess on the note and mortgage as well as on advances he made to beneficiaries after he made the decision to treat the advances as loans. Ann now claims that her litigation resulted in return to the Estate of over $400,000, but her calculation seems to be based in part on what she argued at trial, not what the Court ordered. Counsel for John Jr. tallies the expenses disallowed by the Court at approximately $180,000. Def.'s Opp'n 13.[8] Ann argued after trial, and still does, that many more expenses should have been disallowed, while John Jr. characterizes the benefit to the Estate as a relatively paltry sum.

The Court finds that there was benefit to all the beneficiaries in the Estate from this litigation based upon the Court's findings that John Jr. breached his duty to fairly and expeditiously settle this

---

[7] It is also worth noting that the Law Court also found that reasonable fees should be paid, "notwithstanding the fact that the estate suffered no damage as a result of the business loans." *Stowell II*, 636 A.2d at 442. In addition, because "the costs incurred in defending his accounts resulted, *at least in part,* from [the PR's] breaches of fiduciary duty," the Law Court affirmed the Probate Court's denial of the PR's request for supplemental attorneys fees. *Stowell,* 595 A.2d at 1027 (emphasis added).

[8] Counsel for Nancy and John Jr. suggests that the Court has already, in effect, assessed surcharges against John Jr. by disallowing certain expenses from the distribution proposed by Counsel for the Estate. To be sure, the Court did not conduct a Section 3-712 analysis in disallowing those fees. However, the Court agrees that the disallowed expenses could be characterized as surcharges given the findings now made by the Court after considering the parties' arguments on the applicability of Section 3-712.

estate in the best interests of all the beneficiaries and his duty to remain free of conflicts of interest.[9]  It has to be recognized, however, that these benefits to the estate, however characterized or quantified by the parties, resulted from litigation aggressively prosecuted and defended by both sides. Discovery was extensive, and multiple experts for both sides prepared reports and testified. It is also the case that many of Ann's arguments and claims in this contentious litigation were rejected by the Court. While the Court has now found that the conflicts identified in its prior Order were substantial – particularly given the length of time they existed – the Court must also factor into its decision what benefits to the Estate were actually achieved by the litigation, as part of its determination of what is a reasonable surcharge.[10]

The surcharge requested by Ann is by way of a payment to be made by John Jr. of her unpaid counsel fees to Lambert Coffin in the amount of $237,713.85 together with $1,486.71 in unpaid costs; plus reimbursement by John Jr. directly to Ann of $38,577.50 in fees and costs already paid by her to Lambert Coffin. In addition, she is asking the Court to order payment to her in the amount of $73,278.58 for what she expects to owe State and Federal tax authorities.  Mark is seeking a surcharge in the form of an award of fees to be paid to his attorney in the amount of $31,214, plus his share of mediation fees of $1,301. In an affidavit and itemized bill filed with the Court on January 4, 2023, Attorney Goldsmith indicated her firm would be absorbing all other costs for Mark.  In addition, he is seeking reimbursement to him of $8,885.23 for attorneys fees already paid, and an additional $5,000 to pay for his expected tax liability it State and Federal taxes.[11]  If Ann and Mark's requests are approved and ordered by the Court, the other beneficiaries would bear no financial burden for the litigation that benefited them.

---

[9] In *Tocci v. Tocci,* the Massachusetts Supreme Judicial Court held (after citing *Stowell*) that a surcharge is "limited to situations in which [the plaintiff's] participation is beneficial to the trust … rather than merely the [plaintiff] in question." 189 N.E.3d 241, 260 (Ma. 2022) (citing Restatement (Third) of Trusts § 88, cmt. d).

[10] Counsel for Nancy and John Jr. argues that a surcharge would be inappropriate because as of October 2019, when the Special Administrator was appointed, John Jr. had no control over the sale of the property. The statement is true but does not account for John Jr.'s failure to fairly and expeditiously settle the estate over the many years between John Sr.'s death and the appointment of Attorney Haddow as Special Administrator who finally arranged for the sale of the Estate's only asset.

[11] Alternatively, Ann and Mark propose having John Norton Jr. pay for accounting services necessary to determine "the adverse income tax consequences" to them for any counsel fees awarded to them.

In deciding what constitutes reasonable fees, the Court also cannot overlook the disparity between what Ann and Mark are asking, and what John Jr. is claiming he owes his attorney. While there is no information in the record regarding what John Jr. and Nancy paid Attorney Olson, as they are not seeking any order for counsel fees for his services, obviously what is being sought by Ann and Mark far exceeds the fees charged by Attorney Norton as reflected in his Affidavit and Itemized bill. The total unpaid balance for Atty. Norton comes to $90,293.79 in counsel fees and costs.

John Jr. argues that Ann should not be rewarded for pursuing what he characterizes as "speculative and vexatious litigation." There is no question that Ann pursued this litigation very aggressively, and at times made claims and allegations that were unfounded. However, John Jr.'s decision to single out Ann alone among his siblings and bring a civil action against her in Cumberland County Superior Court is difficult to understand. Ann received an advance from the Estate and promised to pay it back. Other beneficiaries received advances as well, but only Ann was sued for breach of contract and unjust enrichment. The Court understands that neither John Jr. nor Nancy are seeking to have their counsel fees paid (to either Atty. Olson or Atty. Norton) for the Superior Court lawsuit, and the Court would have no authority to award fees to any of the attorneys for their work on the civil case. However, this second lawsuit was regrettable and certainly did nothing to calm the waters.

In considering all these factors, the Court finds as follows. The fees charged by Attorneys Lambert, Clark and Goldsmith reflect work actually done for Ann and Mark. The hourly fees charged are on their face reasonable. However, the Court does not find that the total amount of the fees incurred by Ann are reasonable. As noted, what she incurred for fees exceeds what was incurred by the Estate for services of the Personal Representative's attorney. And importantly, they constitute in Ann's case almost twice her share of the Estate under the most recent but not yet finalized Plan of Distribution. It is concerning that Ann, in particular, had to have known on a monthly basis that she was incurring legal fees that could turn out to be quite disproportionate to any reasonable expectation she might have of the value of her claim.

11

The Court further finds that while Ann and Mark's litigation efforts did bear fruit for the Estate and the other beneficiaries, many of her claims failed, including her assertions that the accounting was a complete fiction; that the Estate never had any income or expenses; that John Jr. is liable to pay all real estate taxes; that the Estate had no obligation to pay the principal on the mortgage; and that John Jr. should have valued the property based upon an opinion of value as opposed to a certified appraisal.

With respect to Mark's request for an award of counsel fees and costs to be paid by John Jr. as a surcharge, counsel for Mark was present at trial, but she made it clear that she would, with Mark's approval, be taking a much less involved role than counsel for Ann. She also explained that Mark joined in most of Ann's positions, but and that he limited his litigation efforts as he was very concerned about jeopardizing his inheritance. Mark has serious health problems and is on a very modest fixed income. While the Law Court has stated that in making fee awards under § 1-601, the ability of a litigant to pay fees is not the primary concern of the court, the parties seem to understand that Mark's ability to pay for his counsel's efforts is extremely limited and would significantly diminish the amount he would be paid in any distribution. *Estate of Voignier,* 609 A.2d at 708.

The Court has concluded that a surcharge is appropriate in this case, but not in the amount requested by either Ann or Mark. The Court finds that some of the litigation efforts by Ann and Mark were incurred by them in establishing the breach of duties by John Jr. which required the retention of experts by both sides. The Court therefore orders that John Jr. is surcharged for the following expert fees: the fees of James McLeod (Plaintiff's expert); the fees charged by Leblanc and Young (Defendant's expert); one half of the fees of Mark Filler (Plaintiff's expert) and one half of the total fees of Purdy Powers. As noted previously, the Court found Mr. McLeod's testimony to be credible, and it was central to the success of Ann and Mark's claim that John Jr. had breached certain duties as a PR. Ann and Mark were less successful in their claims regarding the Accounting done by the PR, but the fact that Plaintiffs had to go to Court to resolve their concerns about the lack of transparency in the accounting process justifies that John Jr. should shoulder a disproportionate share of the accounting expenses. In addition,

12

John Jr. is surcharged for the costs incurred by Ann for mediation with Atty. Crouter, to Pelletier Chases for accounting services, costs for Peter Thornton, Gaige Feliccett Reporting, and the fee paid to Key Bank for records. John Jr. is also surcharged for the costs incurred by Mark for his share of mediation costs of $1,301.

With respect to Ann's request for an order surcharging John Jr. for her counsel fees, the Court finds that only a portion of her fees were incurred in establishing the breaches of duty proven at trial. The Court will therefore order that John Jr. is surcharged in the amount of $75,000 for counsel fees. Any fees and costs incurred before the date of the Probate Court have previously been disallowed, and the Court concludes that the amount now surcharged is reasonably related to the fees incurred in trial time and preparation order to establish the breach of John Jr.'s duties.

With respect to Mark's motion for counsel fees, the Court orders that John Jr. is surcharged in the amount of $25,000 for Mark's counsel fees.

That leaves for consideration John Jr.'s Request for Confirmation of Fees and Costs, along with the availability of a remedy, if any, for Ann and Mark under Section 1-601. The Court has already addressed the expert costs requested by John Jr. The Court finds that John Jr.'s defense of claims brought by Ann was made in good faith, particularly as to her unsuccessful claims. Section 3-720 also provides for payment from the estate of reasonable fees in defending claims, even if the defenses are unsuccessful. The Court has concluded therefore that the surcharges ordered against John Jr. for payment of the lion share of expert costs and a portion of counsel fees for Ann and Mark are sufficient, and the Court will not reduce the Estate's obligations as a whole to pay for the services of Atty. Norton. He had to defend against the claims made by Ann and Mark. He was also responsible for assisting in the Accounting and Plan(s) of Distribution, and the Court concludes the fees requested are reasonable in that his efforts as a whole benefitted all the beneficiaries.

13

Finally, the Court recognizes that leaves Ann, and to a lesser extent Mark, with substantial outstanding counsel fees. The Court has concluded that pursuant to Section 1-601 all the beneficiaries benefitted from their pursuit of this litigation, and the Court will therefore order that the Estate shall pay for $5,000 of Mark's counsel fees, and for $50,000 of Ann's counsel fees.

Ann and Mark have both moved for an additional award of fees for anticipated income taxes. Neither Ann or Mark have cited any authority for the Court to order such an award, or any legal precedent in Maine where that has occurred. In any event, the Court would note that the Estate, and all the beneficiaries have tax obligations, and John Jr. will have to pay surcharges on "after tax" dollars. Their request is therefore denied.

Counsel for Personal Representative John Norton, Jr. shall file a Revised Plan of Distribution based on the above findings within 14 days of this Order, unless otherwise agreed by the parties. The parties have 21 days from the date of this Order to file any post-trial motions under the Rules. If no such motions are filed, the Court will enter final Judgment in this matter. If motions are filed, the Court will enter final Judgment once all such motions are acted upon motion brought by any party.

The entry will be:

> Ann Norton and Mark Norton's Motions for an Award of Counsel fees and costs brought pursuant to Sections 3-712 and 1-601 are GRANTED IN PART and DENIED IN PART. John Jr.'s Request for Confirmation Fees and Expert Costs is GRANTED IN PART and DENIED IN PART.
>
> The Clerk shall note this Order on the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

1/18/2023
_____
DATE

_____
SUPERIOR COURT JUSTICE

Entered on the docket:  01/18/2023

14